STATE OF NORTH CAROLINA v. CLIFFORD RAY MILLER

No. 84A02

(Filed 5 December 2003)

**1. Criminal Law— prosecutor's argument—defendant's versions of facts not in evidence—not comment on failure to testify**

The trial court did not err during a capital sentencing proceeding by failing to intervene ex mero motu during the prosecutor's closing argument that defendant's version of the facts is not in evidence, because: (1) the prosecutor's statement was aimed at demonstrating a weakness in defendant's theory of the case and was not an improper comment on defendant's failure to testify; and (2) the statement properly demonstrated that the evidence did not confirm defendant's version of the facts.

**2. Criminal Law— prosecutor's argument—defendant brought electric tape and racquetball to crime scene**

The trial court did not err during a capital sentencing proceeding by failing to intervene ex mero motu when the prosecutor stated during his cross-examination of defendant's expert that defendant brought a knapsack containing electric tape and a racquetball to the robbery, because the facts give rise to a reasonable inference that defendant brought these items to the scene of the crime.

**3. Discovery— motion for protective order—psychological test data**

The trial court did not err during a capital sentencing proceeding by denying defendant's motion for a protective order requiring raw psychological test data pertaining to defendant to be released only to qualified professionals retained by the State, because the trial court's order did nothing more than employ the provisions of N.C.G.S. § 15A-905(b) which requires this data to be disclosed to the State during discovery.

**4. Evidence— psychological test data—discovery—cross-examination**

The trial court did not commit plain error during a capital sentencing proceeding by failing to intervene ex mero motu to prevent alleged misuse of raw psychological test data pertaining to defendant during the State's cross-examination of defendant's

expert, because: (1) an expert may be required to disclose the underlying facts or data on cross-examination; and (2) if an expert obtained any information from a psychological test administered to a defendant which related to the expert's testimony, then the test is both discoverable and within the proper scope of cross-examination.

**5. Sentencing— capital—aggravating circumstances—murder committed in commission of kidnapping—pecuniary gain— not double counting**

The trial court in a capital sentencing proceeding did not allow double counting of elements and evidence between two statutory aggravating circumstances and thus did not commit plain or harmless error by instructing on the N.C.G.S. § 15A-2000(e)(5) aggravating circumstance that the murder was committed in commission of a kidnapping and the N.C.G.S. § 15A-2000(e)(6) aggravating circumstance that the murder was committed for pecuniary gain, because: (1) the circumstance of committing the murder while in commission of a kidnapping directs the jury's attention to the factual circumstances of defendant's crimes while the circumstance of committing the murder for pecuniary gain requires the jury to consider not defendant's actions but his motive for killing the victim; and (2) both circumstances were supported by sufficient, independent evidence apart from that which overlapped.

**6. Sentencing— capital—aggravating circumstances—murder committed in commission of kidnapping—especially heinous, atrocious, or cruel**

The trial court in a capital sentencing proceeding did not allow double counting of elements and evidence between two statutory aggravating circumstances and thus did not commit plain or harmless error by instructing on the N.C.G.S. § 15A-2000(e)(5) aggravating circumstance that the murder was committed in commission of a kidnapping and the N.C.G.S. § 15A-2000(e)(9) aggravating circumstance that the capital felony was especially heinous, atrocious, or cruel, because: (1) evidence exists separate from the kidnapping showing the murder was especially heinous, atrocious, or cruel, including that defendant made the victim take off his clothes, put a ball into the victim's mouth, put electrical tape around the victim's head to secure the ball which cut off the victim's oxygen supply, and defendant stabbed the victim ten to thirty times while the victim was alive;

and (2) the trial court instructed the jury not to use the same evidence as a basis for finding more than one aggravating circumstance, and it is presumed that the jury follows the trial court's instructions.

## 7. Sentencing— capital—prosecutor's argument—aggravating circumstances—especially heinous, atrocious, or cruel

The trial court did not err during a capital first-degree sentencing phase by allegedly permitting the prosecutor's N.C.G.S. § 15A-2000(e)(9) especially heinous, atrocious, or cruel aggravating circumstance argument to go beyond the victim's murder experience to include what the victim was thinking during the kidnapping offense as well, because: (1) defendant did not object to the prosecutor's request that the jury imagine defendant's feelings during the kidnapping; and (2) the prosecutor's argument was not a request for the jury to consider the same evidence to find aggravating circumstances (e)(5) and (e)(9).

## 8. Constitutional Law— effective assistance of counsel— objective standard of reasonableness

A defendant in a capital first-degree murder trial was not denied effective assistance of counsel based on his counsel's alleged failure to object or preserve error, failure to provide prior evaluations to the defense expert, failure to provide a prior witness statement to the defense expert, and failure to elicit a favorable element of diagnosis from the defense expert, because: (1) defendant failed to show that counsel's performance was deficient; (2) defense counsel's conduct did not fall below an objective standard of reasonableness; and (3) defendant failed to show counsel made errors so serious that counsel was not functioning as the counsel guaranteed defendant by the Sixth Amendment.

## 9. Sentencing— death penalty—proportionate

The trial court did not err in a first-degree murder trial by sentencing defendant to the death penalty, because: (1) defendant was found guilty on the basis of premeditation and deliberation and under the felony murder rule; (2) the jury found three aggravating circumstances under N.C.G.S. § 15A-2000(e)(5) that the murder was committed in commission of a kidnapping, under N.C.G.S. § 15A-2000(e)(9) that the murder was especially heinous, atrocious, or cruel, and under N.C.G.S. § 15A-2000(e)(6) that the murder was committed for pecuniary gain; and (3)

defendant presented no evidence showing that he exhibited concern for the victim after stabbing the victim numerous times.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Judge Russell J. Lanier, Jr. on 25 October 2001 in Superior Court, Onslow County, upon a jury verdict finding defendant guilty of first-degree murder. On 13 February 2002, the Supreme Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of additional judgments. Heard in the Supreme Court 5 May 2003.

*Roy Cooper, Attorney General, by Robert C. Montgomery and Amy C. Kunstling, Assistant Attorneys General, for the State.*

*Paul M. Green for defendant-appellant.*

ORR, Justice.

On 16 October 2001, defendant Clifford Ray Miller was convicted of robbery with a dangerous weapon, felonious conspiracy to commit robbery with a dangerous weapon, first-degree kidnapping, felonious larceny, and first-degree murder. The jury found defendant guilty of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. Following a capital sentencing hearing, the jury recommended a sentence of death for the murder and the trial court imposed consecutive sentences totaling 168 to 230 months imprisonment for the remaining felonies.

Defendant presented no evidence at trial, but the State's evidence tended to show the following: On 13 August 2000, David William Brandt was employed as the assistant manager of Aladdin's Castle, an arcade located in the Jacksonville Mall. As assistant manager, Brandt was responsible for depositing the arcade's earnings in a nearby bank every day or every other day. When Brandt left the mall on 13 August 2000, he was carrying three bank deposit bags containing a total of $2,688.25. As he was leaving, defendant and his friend Angelito Reyes Maniego approached Brandt and asked him for a ride. Brandt had given Maniego rides home on several prior occasions, so Maniego was aware that Brandt often dropped off the arcade's bank deposits after work.

Brandt agreed to give defendant and Maniego a ride. Once inside Brandt's truck, defendant held a knife to Brandt's throat and told him that he would not hurt Brandt if Brandt cooperated. Defendant

instructed Brandt to drive to Wal-Mart, but Maniego told Brandt to keep driving. Brandt drove to an apartment complex where Maniego took over the driving. After driving for about two hours, defendant told Maniego to find the nearest woods, which Maniego did. They pulled to the side of the road and exited the truck. Defendant told Brandt to remove his shirt, and then walked Brandt into the woods, with Maniego following. Next, defendant took a pair of handcuffs from his backpack and handcuffed Brandt to the largest tree he could find. When the handcuffs broke, defendant claimed Brandt fell unconscious. At some point after he handcuffed Brandt, defendant placed a racquetball in Brandt's mouth and wrapped electrical tape around his head to secure the ball. Maniego said, "Now just off him," and handed defendant a knife Maniego had brought from home. Defendant handed the knife back to Maniego, and they argued for several minutes about who should kill Brandt. Ultimately, defendant took the knife and stabbed Brandt approximately 31 times.

Defendant and Maniego then drove Brandt's truck back to Jacksonville. Once there, they cleaned out the truck and left it in a Wal-Mart parking lot. They disposed of Brandt's clothes and divided the money from the deposit bags.

Detectives Condry and Fifield investigated Brandt's disappearance as a missing person case. On 15 August 2000 at 4:00 p.m., the detectives went to defendant's residence to talk with him because he was one of the last people seen with Brandt. Defendant agreed to go with the detectives to the Jacksonville Police Department. At approximately 4:20 p.m., defendant gave a written statement, in which he said Brandt drove defendant and Maniego home.

Detective Condry told defendant his statement was inconsistent with what Maniego told the police. Defendant then made a second statement to the police telling them that a few hours after Brandt left defendant at defendant's home, Maniego returned and took defendant down to the waterfront. At the waterfront Maniego showed defendant the bags of money Brandt had been carrying, and offered defendant half the money in exchange for defendant's silence. Defendant stated that he took half the money and stashed it under a sofa cushion in his home. Based on this statement, the detectives asked defendant if they could search his home for the money. Defendant accompanied the detectives to his home and showed them where he had hidden bundles of cash totaling $892.00 under a sofa cushion. The police then took defendant into custody at which

time defendant made a third statement. In this statement, defendant confessed to murdering Brandt.

After defendant's arrest, defendant and Maniego tried unsuccessfully to help police locate Brandt's body. Ultimately, police officers used bloodhounds to find Brandt's body in a swampy, wooded area of Duplin County.

Defendant assigned no errors to the guilt phase of his trial. Therefore, we only review the sentencing phase of his trial for possible error.

Defendant first contends that the trial court erred by failing to intervene *ex mero motu* to prevent and correct the effects of improper cross-examination and closing argument by the State during the sentencing phase. Defendant argues the State improperly commented on defendant's failure to testify; the State misstated evidence; the trial court improperly denied defendant a protective order; and the trial court failed to prevent misuse of raw psychological data. In determining whether the trial court should have intervened, we "must determine whether the argument[s] in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made." *State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002).

**[1]** Defendant argues the following statement made by the prosecutor during closing argument constituted improper comment on defendant's failure to testify:

> Who is leading who in this case? Who's leading whom? This defendant would have you believe that in fact he is simply a sheep or pawn of Maniego. Well, ladies and gentlemen, this defendant's version of the facts, ladies and gentlemen, that is not in evidence.

Defendant contends that the prosecutor's statement that "defendant's version of the facts . . . is not in evidence" is a clear and definite request for the jury to draw an adverse inference from defendant's failure to testify.

Because defendant did not object to this portion of the closing argument at trial, he carries the burden on appeal of showing the

prosecutor's argument was so grossly improper that the trial court should have intervened *ex mero motu. State v. Call*, 349 N.C. 382, 419-20, 508 S.E.2d 496, 519 (1998). "[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979). In evaluating whether the prosecutor improperly commented on defendant's failure to testify, we must consider the prosecutor's comments "in the context in which they were made and in light of the overall factual circumstances to which they referred." *Call*, 349 N.C. at 420, 508 S.E.2d at 519.

It is well-established that it is improper for a prosecutor to comment in closing argument on a defendant's failure to testify. *State v. Ward*, 354 N.C. 231, 250-51, 555 S.E.2d 251, 264-65 (2001); *State v. Mitchell*, 353 N.C. 309, 326, 543 S.E.2d 830, 840, *cert. denied*, 534 U.S. 1000, 151 L. Ed. 2d 389 (2001); *State v. Parker*, 350 N.C. 411, 430-31, 516 S.E.2d 106, 120 (1999), *cert. denied*, 528 U.S. 1084, 145 L. Ed. 2d 681 (2000). However, a prosecutor does not violate this prohibition unless " 'the language used [was] manifestly intended to be, or was . . . of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' " *State v. Rouse*, 339 N.C. 59, 95-96, 451 S.E.2d 543, 563 (1994), *cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60 (1995), quoting *United States v. Anderson*, 481 F.2d 685, 701 (4th Cir. 1973) *aff'd*, 417 U.S. 211, 41 L. Ed. 2d 20 (1974).

When the prosecutor's statement in the case *sub judice* is considered in its proper context, it is apparent that the prosecutor did not comment on defendant's failure to testify. Rather, the prosecutor's statement was aimed at demonstrating a weakness in defendant's theory of the case. In opening arguments, defendant's counsel emphasized the forthcoming testimony of Dr. Hilkey, a psychologist who was expected to testify that, but for Maniego's strong influence over defendant, defendant would not have killed Brandt. In response, the prosecutor began his closing argument by reminding the jury of the evidence which tended to show that defendant acted independently. The prosecutor pointed out that defendant held a knife to Brandt's throat, told Maniego where to drive and where to pull over, restrained Brandt with the handcuffs, gagged Brandt with a ball and electrical tape, and then stabbed him approximately 31 times. Only after this recitation of the evidence did the prosecutor make the

STATE v. MILLER

[357 N.C. 583 (2003)]

statement in question. After making the statement in question, the prosecutor said "[b]oth of these individuals are culpable in this killing." The prosecutor was arguing that, contrary to defendant's assertion, evidence showed both defendant and Maniego were responsible for Brandt's death, and that the evidence did not show Maniego's influence was the driving force in Brandt's murder. The prosecutor's statement properly demonstrated that the evidence did not confirm defendant's version of the facts; the statement was not an improper comment on defendant's decision not to testify.

Since the prosecutor's statement neither strayed from the bounds of propriety nor, in its proper context, "was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify," *Rouse*, 339 N.C. at 95-96, 451 S.E.2d at 563, quoting *Anderson*, 481 F.2d at 701, it was not so grossly improper that the trial court should have intervened *ex mero motu*. Therefore, defendant's argument is without merit.

**[2]** Defendant next argues that the prosecutor misstated the evidence during his cross-examination of Dr. Hilkey when he asked, "[d]id you ever ask this particular defendant why he took a knapsack to this robbery containing a pair of handcuffs, a roll of electric tape and a racquetball?" Later, during closing argument, the prosecutor made several similar statements, each assuming that defendant brought the ball and electrical tape:

According to this particular defendant's statement he's the one who brought the ball to this horrible crime. He's the one who brought the tape. . . .

What possesses a person to bring electric tape and a racquetball to a robbery?

. . .

Ladies and gentlemen of the [j]ury, he didn't just jump David Brandt out there in the parking lot of the Jacksonville Mall as he was walking out of the store and beat him. He didn't just let David drive a little ways and rob him. Ladies and gentlemen of the [j]ury, he had it thought out to the point he brought along handcuffs, he brought along tape, he brought along a rubber ball.

Despite the prosecutor's repeated statements to the contrary, the evidence does not show defendant told the police he brought the ball and electrical tape to the scene. While he revealed in his statement

**STATE v. MILLER**

[357 N.C. 583 (2003)]

that he brought the handcuffs, defendant only confessed to *using*, not bringing, the ball and electrical tape to silence Brandt.

This Court has held that "[c]ounsel may argue the facts in evidence *and all reasonable inferences that may be drawn therefrom* together with the relevant law in presenting the case." *State v. Anderson*, 322 N.C. 22, 37, 366 S.E.2d 459, 468 (emphasis added), *cert. denied*, 488 U.S. 975, 102 L. Ed. 2d 548 (1988). Certainly, the facts give rise to an inference that defendant brought the ball and tape to the scene of the crime. First, defendant admitted to bringing the handcuffs to the scene in a backpack he regularly carried. While defendant did not expressly admit to bringing the ball and tape, he confessed to the police that he used all three implements—the ball, the tape and the handcuffs—to restrain Brandt before stabbing him. Additionally, defendant pointed out in his statement that Maniego handed him the knife Maniego had brought to the scene and told defendant to kill Brandt. That defendant did not tell the police Maniego also brought the ball and tape to the scene gives rise to an inference that defendant brought them himself. Finally, Dr. Hilkey testified on cross-examination that he was aware the ball and tape were brought to the scene, but he could not remember whether defendant had disclosed this information to him or whether he had read it in one of Maniego's statements. While the inference is less direct here, counsel for the State could infer that Dr. Hilkey's response meant he was aware, either through his contact with defendant or his review of Maniego's statements, that defendant brought the ball and tape. Because the prosecutor's comments were "reasonable inferences" drawn from facts in evidence, *Anderson*, 322 N.C. at 37, 366 S.E.2d at 468, the prosecutor's remarks were not improper. Therefore, the prosecutor's remarks did not amount to gross impropriety warranting the trial court's intervention, and defendant's assignment of error is overruled.

[3] Defendant also claims the trial court erred by denying his motion for a protective order requiring raw psychological test data pertaining to the defendant to be released only to qualified professionals retained by the State. Defendant argues that releasing the data directly to prosecutors was error, and that the trial court erred by failing to intervene in order to prevent the subsequent misuse of the raw data during the State's cross-examination of Dr. Hilkey at the sentencing hearing.

In the present case, the State requested that the trial court order the defense to disclose the raw test data obtained from Dr. Hilkey's

psychological examination of defendant. Defendant's counsel explained that Dr. Hilkey had some ethical concerns about disclosing the data, but would agree to turn it over if the court ordered him to do so. On the trial court's order, the data was disclosed to the State, which later used it to cross-examine Dr. Hilkey.

We first address whether the trial court erred in denying defendant's motion for a protective order. N.C.G.S § 15A-905(b) requires defendants to produce to the State during discovery, among other things,

> results or reports of physical or mental examinations or of tests, measurements or experiments made in connection with the case, or copies thereof, within the possession and control of the defendant which the defendant intends to introduce in evidence at the trial or which were prepared by a witness whom the defendant intends to call at the trial, when the results or reports relate to his testimony.

N.C.G.S. § 15A-905(b) (2001). In addition, in applying N.C.G.S. § 15A-905(b), this Court has held that raw psychological data like the data at issue in the present case *must* be disclosed to the State during discovery. *See State v. Cummings*, 352 N.C. 600, 615, 536 S.E.2d 36, 48 (2000). Because the trial court's order did nothing more than employ the provisions of N.C.G.S. § 15A-905(b), we conclude that the trial court did not err in its denial of defendant's motion for a protective order and its subsequent order requiring defendant to turn over the data in question directly to the prosecutors.

**[4]** We next consider whether the trial court erred in failing to intervene *ex mero motu* to prevent alleged misuse of the raw psychological data during the State's cross-examination of Dr. Hilkey at the sentencing hearing. Because defendant did not object, we review the cross-examination for plain error. *See* N.C. R. App. P. 10(c)(4); and *State v. Barden*, 356 N.C. 316, 348, 572 S.E.2d 108, 130 (2002) (where defendant assigned error, but failed to object, to the prosecutor's cross-examination, and this Court applied plain error review), *cert. denied*, —— U.S. ——, 155 L. Ed. 2d 1074 (2003). Under plain error review, "reversal is justified when the claimed error is so basic, prejudicial, and lacking in its elements that justice was not done." *State v. Prevatte*, 356 N.C. 178, 258, 570 S.E.2d 440, 484 (2002), *cert. denied*, —— U.S. ——, 155 L. Ed. 2d 681 (2003).

We have already established that defense counsel was required by N.C.G.S. § 15A-905(b) to turn over the data in question during dis-

covery. While the Rules of Evidence do not apply during sentencing hearings, we are also guided in this instance by N.C.G.S. § 8C-1, Rule 705 (2001), which states in part that "[t]he expert may in any event be required to disclose the underlying facts or data on cross-examination." Additionally, this Court has held that if an expert obtained any information from a psychological test administered to a defendant which related to the expert's testimony, then the test is both discoverable and within the proper scope of cross-examination. *State v. McCarver*, 341 N.C. 364, 397-98, 462 S.E.2d 25, 44 (1995), *cert. denied*, 517 U.S. 1110, 134 L. Ed. 2d 482 (1996). We therefore conclude that the cross-examination of Dr. Hilkey was proper, and that the trial court committed no error in failing to intervene *ex mero motu*. Defendant's assignment of error is overruled.

**[5]** Defendant next claims the trial court erred by providing jury instructions that allowed double-counting of evidence and elements between statutory aggravating circumstances. Defendant presents two arguments in support of his claim: aggravating factor (e)(6) was subsumed within factor (e)(5); and aggravating factor (e)(5) was subsumed within factor (e)(9).

The State claims plain error review applies because defendant failed to object to the alleged double counting of elements and evidence. However, defendant contends harmless error analysis applies because the trial court failed to record the charge conference as N.C.G.S. § 15A-1231(b) requires, and because *Stringer v. Black*, 503 U.S. 222, 231, 117 L. Ed. 2d 367, 379 (1992), states that plain error review is not constitutionally sufficient for invalid aggravating circumstances. We conclude that the aggravating circumstances were not duplicative. Therefore, the trial court committed neither plain nor harmless error regarding the double-counting of elements and evidence in its aggravating circumstances jury instructions, and we need not reach the issue of which standard of review applies.

Defendant first argues aggravating factor (e)(5) (the murder was committed in commission of a kidnapping) was subsumed within aggravating factor (e)(6) (the murder was committed for pecuniary gain). A jury may not consider two aggravating circumstances when one completely overlaps the other. *State v. Jennings*, 333 N.C. 579, 628, 430 S.E.2d 188, 214, *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993). The trial court properly instructed the jury on the (e)(5) aggravating factor as follows:

**STATE v. MILLER**

[357 N.C. 583 (2003)]

First-degree kidnapping is the unlawful confinement, restraint or removal of a person without the person's consent for the purpose of facilitating his commission of the felony of robbery with a dangerous weapon, when the confinement, restraint or removal was a separate complete act, independent of and apart from the robbery with the dangerous weapon and the person was not released by the defendant in a safe place or had been seriously injured.

If you find from the evidence beyond a reasonable doubt that when the defendant killed the victim, the defendant unlawfully confined a person, restrained a person, removed a person from one place to another and that the person did not consent and that this was done for the purpose of facilitating the defendant's commission of robbery with a dangerous weapon and this confinement, restraint or removal was a separate complete act, independent of and apart from the robbery with a dangerous weapon and that the person confined, restrained or removed was not released by the defendant in a safe place or had been seriously injured, you would find this aggravating circumstance and would so indicate by having your foreperson write "yes" in the space after this aggravating circumstance on the "Issues and Recommendations" form.

The trial court then instructed the jury on the (e)(6) aggravating factor as follows:

A murder is committed for pecuniary gain if the defendant, when he commits it, obtained or intends or expects to obtain money or some other thing which can be valued in money, either as compensation for committing it or as a result of the death of the victim.

If you find from the evidence beyond a reasonable doubt that when the defendant killed the victim, the defendant did so to obtain from the victim $2688 in U.S. money held by the victim for the victim's employer, you would find this aggravating circumstance, and would so indicate by having your foreperson write "yes" in the space after this aggravating circumstance on the Issues and Recommendation form.

"Double-counting occurs when two aggravating circumstances" based upon the same evidence are submitted to the jury. *State v. Barnes*, 345 N.C. 184, 238, 481 S.E.2d 44, 74, *cert. denied, Chambers*

*v. North Carolina*, 522 U.S. 876, 139 L. Ed. 2d 134 (1997), *cert. denied*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998). While a complete overlap is impermissible, some overlap in the evidence supporting each aggravating circumstance is permissible. *Id.* Defendant argues that the submission of both the (e)(5) and (e)(6) aggravating circumstances in this case constitutes impermissible double-counting. We disagree.

As we stated in *State v. Green*, 321 N.C. 594, 610, 365 S.E.2d 587, 596-97, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1998), " 'there is no error in submitting multiple aggravating circumstances provided that the inquiry prompted by their submission is directed at distinct aspects of the defendant's character or the crime for which he is to be punished.' " (quoting *State v. Hutchins*, 303 N.C. 321, 354, 279 S.E. 2d 788, 808 (1981), *cert. denied*, 464 U.S. 1065, 79 L. Ed. 2d 207 (1984)). Such is the case here. The circumstance of the committing the murder while in commission of a kidnapping "directs the jury's attention to the factual circumstances of defendant's crimes. The circumstance of [committing the murder for pecuniary gain] requires the jury to consider not defendant's actions but his motive" for killing the victim. *Green*, 321 N.C. at 610, 365 S.E.2d at 597. Therefore, we conclude the trial court did not err by submitting both the (e)(5) and the (e)(6) aggravating circumstances to the jury.

Furthermore, in *Call*, 349 N.C. 382, 508 S.E.2d 496, we considered nearly identical jury instructions and found no error. Our rationale in *Call* applies to this case.

> Even though the jury would necessarily have to consider evidence of the robbery to find each aggravating circumstance, it is clear from the record that the trial court did not allow the jury to find both aggravating circumstances using the exact same evidence. Further, both circumstances were supported by sufficient, independent evidence, apart from that which overlapped, upon which the jury could rely.

*Id.* at 427, 508 S.E.2d at 524. As in *Call*, we conclude that aggravating circumstance (e)(6) was not subsumed within aggravating circumstance (e)(5), and that the trial court did not commit error by instructing the jury on both circumstances.

[6] Next, we examine whether aggravating circumstance (e)(5) (the murder was committed while defendant was engaged in the commission of a kidnapping) was completely subsumed within aggravating

circumstance (e)(9) (the capital felony was especially heinous, atrocious, or cruel), and whether the trial court erred in failing to intervene to prevent improper argument regarding aggravating circumstance (e)(9).

The evidence showing the murder was committed during a kidnapping is, as the trial court stated in its instruction to the jury, that the defendant unlawfully confined a person, restrained a person, removed a person from one place to another and that the person did not consent and that this was done for the purpose of facilitating the defendant's commission of robbery with a dangerous weapon. Evidence exists separate from the kidnapping, showing the murder was especially heinous, atrocious, or cruel, including that defendant made the victim take off his clothes, put a ball into the victim's mouth, and put electrical tape around the victim's head to secure the ball. The electrical tape covered the victim's mouth and nose. The ball and tape completely cut off the victim's oxygen supply. Dr. Christopher Ingram, the medical examiner who performed the autopsy on the victim, testified that the victim would have lost consciousness within four minutes due to the ball and tape if defendant had not stabbed the victim. Defendant then stabbed the victim ten to 30 times while the victim was alive. Thus, separate evidence, apart from the kidnapping, shows the murder was especially heinous, atrocious, or cruel.

The trial court instructed the jury not to use the same evidence as a basis for finding more than one aggravating factor. Because separate evidence exists for each factor, and because we must presume the jury followed the trial court's instructions, *State v. Wiley*, 355 N.C. 592, 637, 565 S.E.2d 22, 52, *cert. denied*, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003), we conclude that aggravating circumstance (e)(5) was not subsumed within aggravating circumstance (e)(9). Hence, we conclude the trial court did not err by instructing the jury on aggravating circumstances (e)(5) and (e)(9).

[7] Defendant also claims that the trial court erred by permitting the prosecutor's (e)(9) argument (that the murder was especially heinous, atrocious, or cruel) to go beyond the victim's murder experience to include the kidnapping offense as well. Defendant also argues that the prosecutor asked the jury to use the same evidence to find these two aggravating circumstances.

When the prosecutor first asked the jury to "image [sic] what [the victim] thought" during his closing arguments, defendant objected.

STATE v. MILLER

[357 N.C. 583 (2003)]

We assume defendant was objecting to the prosecutor's request that the jury imagine what the victim was thinking. However, we have consistently found such requests to be proper. *See State v. Anthony*, 354 N.C. 372, 427, 555 S.E.2d 557, 592 (2001); *State v. Jones*, 346 N.C. 704, 714-15, 487 S.E.2d 714, 720-21 (1997). Moreover, defendant does not argue that the prosecutor's general request that the jury imagine what the victim was thinking was improper. Therefore, we decline to find the prosecutor's request improper in this case.

Furthermore, defendant did not object to the prosecutor's request that the jury imagine defendant's feelings during the kidnapping. Thus, we must determine whether the prosecutor's remarks were "so grossly improper that the trial court erred in failing to intervene *ex mero motu*." *Barden*, 356 N.C. at 358, 572 S.E.2d at 135.

Although a complete overlap in the evidence supporting each aggravating factor is impermissible, some overlap in the evidence supporting each aggravating factor is permitted. *Barnes*, 345 N.C. at 238, 481 S.E.2d at 74. Here, although some of the evidence of aggravating circumstances (e)(5) and (e)(9) overlaps, separate and distinct evidence exists for each factor. We conclude that the prosecutor's request for the jury to consider the victim's thoughts during the kidnapping was proper. We also conclude that the prosecutor's argument was not a request for the jury to consider the exact same evidence to find aggravating circumstances (e)(5) and (e)(9). Therefore, we overrule defendant's assignment of error.

[8] Next, defendant contends he was denied effective assistance of counsel by counsel's failure to object or preserve error, counsel's failure to provide prior evaluations to Dr. Hilkey, counsel's failure to provide a prior witness statement to Dr. Hilkey, and counsel's failure to elicit a favorable element of diagnosis from Dr. Hilkey.

In *State v. Braswell*, this Court adopted the United States Supreme Court's language in *Strickland v. Washington*, and enunciated the following two-part test for determining whether a defendant received ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so

serious as to deprive the defendant of a fair trial, *a trial whose result is reliable.*

*Braswell,* 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting *Strickland,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)). We conclude that counsel's performance was not deficient; therefore, defendant did not receive ineffective assistance of counsel.

Defendant first claims he received ineffective assistance of counsel because his counsel failed to object or preserve error regarding the following: the prosecutor's improper comment on defendant's failure to testify; the prosecutor's misstatement of evidence; the double-counting of elements and evidence between statutory aggravating circumstances; and the prosecutor's improper argument regarding the especially heinous, atrocious, or cruel aggravating circumstance.

Defendant argues that his counsel failed to object to the prosecutor's comment on defendant's failure to testify. However, we have previously concluded that the prosecutor's statement was not an improper comment on defendant's failure to testify. Therefore, the prosecutor's statement was not improper, and defendant failed to show that counsel's performance was deficient, as the first part of the *Strickland* test requires.

Defendant next argues he received ineffective assistance of counsel because his counsel failed to object to the prosecutor's misstatement of the evidence during the prosecutor's cross-examination of Dr. Hilkey. However, the prosecutor did not misstate the evidence. Therefore because the prosecutor's statement was proper, defendant's counsel did not err by declining to object, and defendant failed to show his counsel was deficient as required by the first part of the *Strickland* test.

Defendant also argues he received ineffective assistance of counsel because his counsel failed to object to the double-counting of elements and evidence between statutory aggravating circumstances. However, we have already determined that the trial court properly instructed the jury on all three aggravating circumstances. Therefore, the prosecutor's statement was not improper, and defendant failed to meet the first prong of the *Strickland* test.

Additionally, defendant claims he received ineffective assistance of counsel because his counsel failed to object to the prosecutor's improper argument regarding the especially heinous, atrocious, or cruel aggravating circumstance. Having concluded that the prosecu-

tor's remarks were not improper, counsel was not deficient by choosing not to object, and defendant again has failed to meet the first part of the *Strickland* test.

Defendant next claims he received ineffective assistance of counsel because of his counsel's failure to provide defendant's prior psychiatric evaluations to Dr. Hilkey, the psychologist who testified on defendant's behalf. Defendant contends this failure made Dr. Hilkey look unprepared and undermined the psychologist's credibility. The transcript contains sufficient information to determine whether counsel's decision not to provide defendant's prior psychiatric evaluations to Dr. Hilkey prejudiced defendant. Therefore, we will review this issue on direct appeal.

We do not conclude defense counsel's conduct "fell[] below an objective standard of reasonableness," *State v. Fair*, 354 N.C. 131, 166-67, 557 S.E.2d 500, 525 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002), when defense counsel failed to provide Dr. Hilkey with defendant's prior psychological evaluations. Defendant argues that because Dr. Hilkey did not review these evaluations prior to testifying, he appeared unprepared during the State's cross-examination. However, Dr. Hilkey's credibility was not harmed. In fact, defense counsel used the cross-examination in his closing argument to bolster Dr. Hilkey's credibility. Therefore, because defendant failed to show "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment," *Braswell*, 312 N.C. at 562, 324 S.E. 2d at 248, defendant did not meet the first prong of the *Strickland* test.

Defendant next claims he received ineffective assistance of counsel because defense counsel did not provide Dr. Hilkey with a witness statement. After Dr. Hilkey testified, the State presented rebuttal evidence consisting of Anthony Nathan's testimony that he heard defendant tell another jail inmate, "I can't change anything. I mean, I'm guilty. . . . I know I did it and I didn't feel anything." The transcript contains sufficient information to determine whether counsel's decision not to provide Dr. Hilkey with Nathan's statement prejudiced defendant. Therefore, we will review this issue on direct appeal.

Defense counsel's failure to inform Dr. Hilkey of this statement did not harm Dr. Hilkey's credibility. In defense counsel's closing argument at sentencing, counsel stated: "after the fourth stab wound and [defendant] went into a fog. . . .[that defendant said he] didn't feel anything is consistent with Dr. Hilkey's opinion." Because evidence

that defendant "didn't feel anything" when he killed the victim is not inconsistent with defendant feeling remorse at a later time, defense counsel did not err by failing to inform Dr. Hilkey of this statement. Thus, defendant failed to show "that counsel's performance was deficient," *Braswell*, 312 at 562, 324 S.E.2d at 248.

Next, defendant argues his trial counsel was ineffective by failing to elicit testimony from Dr. Hilkey concerning one element of dependent personality. Dr. Hilkey testified that defendant met six of eight criteria for a dependent personality, as defined by the Revised *Diagnostic and Statistical Manual of Mental Disorders* (Michael B. First ed. 4th ed. 2000). Dr. Hilkey described the fifth criterion as: "goes to excessive lengths to obtain nurturing and support of others." The Revised *Diagnostic and Statistical Manual of Mental Disorders* in fact defines the fifth criterion as: a person who "goes to excessive lengths to obtain nurturance and support from others, *to the point of volunteering to do things that are unpleasant.*" *Id.* at 725 (emphasis added). Defendant argues the italicized language, which defense counsel did not elicit from Dr. Hilkey, directly addresses how defendant's dependent personality related to his criminal actions.

The record indicates defense counsel did not fail to elicit defendant's dependent personality from Dr. Hilkey. Although Dr. Hilkey's description of the fifth criterion did not indicate Maniego influenced defendant to commit crimes, other portions of Dr. Hilkey's testimony indicate Maniego's influence. For example, Dr. Hilkey testified that defendant "would often times seek people who he would rely on who he would become dependent on and abandon his own . . . sense of . . . self." Dr. Hilkey also testified that defendant's "need to belong . . . took precedence over his own capacity to know right from wrong," and that defendant was "directly influenced by the behavior of [Maniego]." Thus, Dr. Hilkey did indicate that defendant's personality disorder influenced his commission of crimes.

Defendant's counsel did not err merely by failing to elicit evidence of Maniego's influence at the beginning of Dr. Hilkey's testimony. Therefore, defendant failed to show ineffective assistance of counsel because he did not show his "counsel's performance was deficient." *Braswell*, 312 N.C. at 562, 324 S.E.2d at 248.

## PRESERVATION ISSUES

Defendant next argues that, because the murder indictment failed to allege all the elements of first-degree murder and all the

STATE v. MILLER

[357 N.C. 583 (2003)]

aggravating circumstances to be applied at the capital sentencing hearing, the murder indictment was in violation of his constitutional rights. But, as we stated in *State v. Hunt*, 357 N.C. 257, 278, 582 S.E.2d 593, 607, *cert. denied*, —— U.S. ——, 156 L. Ed. 2d 702 (2003), the failure to include all aggravating circumstances in an indictment "violates neither the North Carolina nor the United States Constitution." *Id.* Also, we stated in *State v. Wallace*, 351 N.C. 481, 508, 528 S.E.2d 326, 341, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000), that the elements of first-degree murder need not be charged. Therefore, the murder indictment is proper, and defendant's assignment of error is overruled.

Defendant next contends this Court should strike the death penalty as unconstitutional. However, this Court has consistently held that the death penalty is constitutional. *See e.g. State v. Haselden*, 357 N.C. 1, 28, 577 S.E.2d 594, 611, *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 72 U.S.L.W. 3308 (2003); *State v. McKoy*, 327 N.C. 31, 37-39, 394 S.E.2d 426, 429-30 (1990); *State v. Barfield*, 298 N.C. 306, 343-54, 259 S.E.2d 510, 537-44 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). We find no reason to depart from our prior holdings. Hence, we conclude that the death penalty is constitutional.

Finally, defendant claims aggravating circumstance N.C.G.S. § 15A-2000(e)(9), that the murder was especially heinous, atrocious, or cruel, is unconstitutionally vague and overbroad. We have repeatedly considered and rejected this argument. *Haselden*, 357 N.C. at 26, 577 S.E.2d at 610; *State v. Call*, 353 N.C. 400, 424, 545 S.E.2d 190, 205, *cert. denied*, 534 U.S. 1046, 151 L. Ed. 2d 548 (2001). We see no reason to depart from our prior rulings on this issue. Thus, we determine that aggravating circumstance (e)(9) is not overbroad.

## PROPORTIONALITY REVIEW

[9] Having concluded that defendant's sentencing proceeding was free from prejudicial error, we must now determine: (1) whether the record supports the aggravating circumstances found by the jury and upon which the sentence of death was based; (2) whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the death sentence "is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2) (2001).

In the present case, the jury found defendant guilty of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. The jury found the aggravating circumstances that defendant committed the murder while engaged in commission of first-degree kidnapping, N.C.G.S. § 15A-2000(e)(5); the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9); and defendant committed the murder for pecuniary gain, N.C.G.S. § 15A-2000(e)(6). After reviewing the record, transcripts, briefs, and oral arguments we conclude that the evidence supports all three aggravating circumstances. Moreover, we conclude that the death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

Proportionality review is designed to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935. In conducting proportionality review, we determine whether "the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Williams*, 308 N.C. 47, 79, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983); *see* N.C.G.S. § 15A-2000(d)(2). Whether the death penalty is disproportionate "ultimately rest[s] upon the experienced judgments of the members of this Court." *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994).

This Court has determined that the death sentence was disproportionate in eight cases. *State v. Kemmerlin*, 356 N.C. 446, 489, 573 S.E.2d 870, 898-99 (2002); *State v. Benson*, 323 N.C. 318, 328, 372 S.E.2d 517, 522 (1988); *State v. Stokes*, 319 N.C. 1, 27, 352 S.E.2d 653, 668 (1987); *State v. Rogers*, 316 N.C. 203, 237, 341 S.E.2d 713, 733 (1986) (*overruled on other grounds by State v. Gaines*, 345 N.C. 647, 677, 483 S.E.2d 396, 414 (1997), and *by State v. Vandiver*, 321 N.C. 570, 573, 364 S.E.2d 373, 375); *State v. Young*, 312 N.C. 669, 691, 325 S.E.2d 181, 194 (1985); *State v. Hill*, 311 N.C. 465, 479, 319 S.E.2d 163, 172 (1984); *State v. Bondurant*, 309 N.C. 674, 693, 309 S.E.2d 170, 182 (1983); and *State v. Jackson*, 309 N.C. 26, 46, 305 S.E.2d 703, 719 (1983).

However, each of these eight cases is distinguishable from the present case. In *Kemmerlin*, 356 N.C. at 488, 573 S.E.2d at 898; *Benson*, 323 N.C. at 328, 372 S.E.2d at 522; *Stokes*, 319 N.C. at 10, 352 S.E.2d at 658; *Rogers*, 316 N.C. at 236, 341 S.E.2d at 732; *Hill*, 311 N.C.

at 469, 319 S.E.2d at 166; and *Jackson,* 309 N.C. at 44, 305 S.E.2d at 716, the jury only found one aggravating circumstance. Here, the jury found three aggravating circumstances.

In *Young,* 312 N.C. at 690, 325 S.E.2d at 194, where the jury found two aggravating circumstances, this Court noted that the jury failed to find the especially heinous, atrocious, or cruel aggravating circumstance. N.C.G.S. § 15A-2000(e)(9). Here, the jury found that aggravating circumstance.

In *Bondurant,* 309 N.C. at 694, 309 S.E.2d at 182, this Court determined that the death penalty was unconstitutional because immediately after the defendant shot the victim, the defendant exhibited concern for the victim and took the victim to the hospital. Here, defendant presented no evidence showing that he exhibited concern for Brandt after he stabbed Brandt. In fact, the evidence shows defendant left the victim's body in the woods, and did not attempt to find the body until several days after the murder. Even then, defendant only did so at a detective's request, and was unable to locate the body.

Additionally, in *Benson,* 323 N.C. at 328, 372 S.E.2d at 522, *Stokes,* 319 N.C. at 27, 352 S.E.2d at 668, and *Jackson,* 309 N.C. at 44, 305 S.E.2d at 716, the defendants were convicted of felony murder only. Here, defendant was convicted of both felony murder and murder with premeditation and deliberation. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis,* 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds,* 494 U.S. 1023, 108 L. Ed. 2d 604 (1990).

After reviewing the cases, we conclude that the present case is more similar to certain cases in which we have found the death penalty proportionate (like *State v. Mann* 355 N.C. 294, 318, 560 S.E.2d 776, 791, *cert. denied,* 537 U.S. 1005, 154 L. Ed. 2d 403 (2002), where the jury found the same three aggravating circumstances as the jury found in the case at bar) than those cases in which we have found the death penalty disproportionate. Accordingly, we conclude defendant received a fair trial and capital sentencing proceeding, free from prejudicial error. Therefore, the sentence of death entered against defendant must be left undisturbed.

NO ERROR.