STATE OF NORTH CAROLINA v. JAMES DARYL WALKER

No. COA04-978

(Filed 7 June 2005)

**1. Evidence— basis for expert's report—initial evidence gathering by another**

    Testimony from an expert SBI firearms examiner was properly admitted where it was based in part on initial evidence taken by another agent who did not testify. The evidence was corroborative and helped form the basis of the expert's opinion; the expert testified that he independently analyzed the entirety of the evidence, including the other agent's report; defendant was afforded a full opportunity to cross-examine the expert as to the basis of his expert opinion; and defendant did not request a limiting instruction.

**2. Homicide— instructions—final mandate—self-defense**

    There was no plain error in the trial court's treatment of self-defense in its final mandate in a first-degree murder prosecution. The trial court correctly discussed self-defense in the body of its charge, and, in its final mandate instructed the jury that it could return a not guilty verdict if the State failed to satisfy the jurors beyond a reasonable doubt that the defendant did not act in self-defense.

**3. Homicide— short-form indictment—constitutional**

    The short-form first-degree murder indictment was constitutional where defendant received the presumptive term of life without parole.

Appeal by defendant from judgment entered 15 October 2003 by Judge J. Richard Parker in Nash County Superior Court. Heard in the Court of Appeals 10 March 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General James P. Longest, Jr., for the State.*

*Paul Pooley for defendant-appellant.*

CALABRIA, Judge.

James Daryl Walker ("defendant") appeals from a judgment entered on a jury verdict of guilty of first-degree murder. De-

fendant was sentenced to life imprisonment without possibility of parole in the North Carolina Department of Correction. We find no error.

The State presented evidence at trial that on the night of 10 November 2001 and during the early morning hours of 11 November 2001, Gerald Williams ("Williams"), Glenwood Loftin (the "victim"), and Jonathan Battle ("Battle") were driving in the Rocky Mount area to find a club to patron. After declining a couple of clubs due to inactivity, the three went to Moore's Ball Field at approximately 1:00 a.m. After a couple of conflicts with an individual identified as Rickshawn, Williams went outside and observed another conflict between Larry Williams and Jarvis Richardson. Williams, Battle, and Jeffrey Battle attempted to become involved, but Williams was prevented from doing so by an individual identified as Bohanon. At approximately the same time, defendant began firing at the victim as the victim was running from defendant in the area where cars were parked outside of the club. Defendant followed the victim and continued shooting him, even when the victim continued to try to flee after falling on the hood of a car. After the shooting, defendant left with Shawn Brake ("Brake"). Although multiple guns were involved, including 9mm pistols belonging to both defendant and Brake, ballistics comparisons revealed that the victim was shot and killed by bullets fired from defendant's weapon.

Defendant also presented evidence at trial. Defendant called Shanell Nicole Williams as a witness. She testified that the victim was holding a beer bottle during the time the fights occurred and was shot by Brake after Brake told him to drop the bottle. Next, defendant testified that, during the time the fights were ongoing, the victim approached him with an upraised beer bottle, and, when the victim failed to heed defendant's warnings to "[s]top or [he was] going to shoot," defendant closed his eyes and shot at the victim because he was afraid the victim was going to attack him and injure him using the bottle as a weapon. Defendant testified he did not want to hurt the victim but also did not want to get hurt. Defendant said when he opened his eyes, he saw the victim falling on the car and heard additional shots.

Defendant was arrested, charged, and indicted for first-degree murder. At the close of the State's evidence and again at the close of all the evidence, defendant moved to dismiss the charge. The trial court denied defendant's motions, and the jury found him guilty of first-degree murder. Defendant was sentenced to life imprisonment

without the possibility of parole. Defendant appeals from the judgment imposed.

## I. Confrontation Clause

[1] In the instant case, State Bureau of Investigation ("SBI") Agent Peter Ware ("Agent Ware") testified as an expert in the field of forensic firearms identification. Agent Ware testified that, according to standard procedure, Special Agent Dave Santora initially took the evidence. He described the standard procedure as follows:

> What happens is when an individual examiner [here, Agent Santora] gets in evidence and they work the case, they compile their notes, and once their notes have been compiled and they issue a draft report, they then take that evidence, the fired casings and the projectile, whatever they may have from the scene, and then they are test fired, if there was a weapon involved. They take that to a senior examiner [here, Agent Ware]. The Senior examiner will then independently microsopically look at the casings or projectiles that have been test fired, reach their conclusions, and then they will review the notes and the report of the examiner who originally did the notes and report, and make sure that all the conclusions are in there and it's appropriately documented, and then they will sign off on that report, and it goes back to the examiner to have an administrative review done [before the final report from the SBI is issued].

Agent Ware further affirmed that he "actually work[ed] with every piece of evidence and every test firing of the weapons and everything" and "personally looked over all the evidence in the case and the conclusions." Detective Ware testified that he "c[a]me to the same conclusions as Mr. Santora did in his draft report" and had brought Agent Santora's original issued report and findings with him to court. Thereafter, Agent Ware testified, in relevant part, that the two 9mm bullets retrieved from the victim's body were fired from defendant's gun. One of those bullets lacerated the victim's aorta, causing his death.

At trial, defendant objected to Agent Ware's testimony on grounds of hearsay and to Agent Santora's report on the grounds that "the person who prepared [the report was] not [t]here to testify." The trial court overruled defendant's objections and admitted both the testimony and the report into evidence. In his first assignment of error, defendant asserts the trial court erred in allowing the ballistics report

and related testimony because Agent Santora did not appear at trial, was not unavailable, and who defendant did not have a prior opportunity to cross-examine. We disagree.

In 2004, the United States Supreme Court issued its opinion in *Crawford v. Washington*, 541 U.S. 36, 61, 158 L. Ed. 2d 177, 199 (2004), determining that the Confrontation Clause of the United States Constitution was a procedural, rather than substantive, guarantee designed to ensure a particular method of testing reliability— cross-examination—as opposed to ensuring a particular quantum of reliability with respect to certain statements. The Confrontation Clause bars testimonial statements of witnesses if they are not subject to cross-examination at trial unless (1) the witness is unavailable and (2) there has been a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 59, 158 L. Ed. 2d at 197. The Court defined testimony as follows: "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51, 158 L. Ed. 2d at 192. An exception to the new rule espoused in *Crawford* is a familiar one: where evidence is admitted for a purpose other than the truth of the matter asserted, the protection afforded by the Confrontation Clause against testimonial statements is not at issue. *Crawford*, 541 U.S. at 59-60, n.9, 158 L. Ed. 2d at 197-98, n. 9. Thus, where the evidence is admitted for, *inter alia*, corroboration or the basis of an expert's opinion, there is no constitutional infirmity. *See, e.g.*, *State v. Baymon*, 336 N.C. 748, 759-60, 446 S.E.2d 1, 6-7 (1994) (corroboration); *State v. Quick*, 329 N.C. 1, 29, 405 S.E.2d 179, 196 (1991) (basis of expert's opinion).

In the instant case, we conclude the evidence was properly admissible for non-testimonial purposes both because it was corroborative and because it helped form the basis of an expert's opinion. Agent Ware testified that he independently analyzed the entirety of the ballistics evidence, including Agent Santora's report, and concluded defendant's gun fired the bullets recovered from the victim's body. He further testified that his conclusions accorded with Agent Santora's report. As a result, the report was corroborative of Agent Ware's testimony and admissible for that purpose. In addition, Agent Ware was qualified as an expert in the area of forensic firearm identification and was entitled, therefore, to use Agent Santora's report for the purpose of forming his opinion on the issue of whether defendant's gun fired the bullets which were recovered from the victim's body. Defendant was, moreover, fully afforded the opportunity to cross-examine Agent Ware as to the basis of his

expert opinion. While the report might be used to prove the truth of the matter asserted and, therefore, be considered testimonial, the trial court properly admitted the evidence due to the permissible non-testimonial purposes. Defendant could have, but failed to, request a limiting instruction that would have clarified the appropriate evidentiary use of the evidence. *State v. Noble*, 326 N.C. 581, 585, 391 S.E.2d 168, 171 (1990). This assignment of error is overruled.

II. Jury Instruction

**[2]** Defendant's second assignment of error concerns the jury instruction. Defendant asserts the trial court committed plain error by failing to include in its final mandate to the jury a possible verdict of not guilty by reason of self-defense to the murder and manslaughter charges. Plain error review is the appropriate standard where, as here, defendant failed to object to the jury charge at trial.

"[T]he plain error rule . . . is *always to be applied cautiously*[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted). "Under plain error review, 'reversal is justified when the claimed error is so basic, prejudicial, and lacking in its elements that justice was not done[,]' " *State v. Miller*, 357 N.C. 583, 592, 588 S.E.2d 857, 864 (2003), *cert. denied*, ⸺ U.S. ⸺, 159 L. Ed. 2d 819 (2004) (quoting *State v. Prevatte*, 356 N.C. 178, 258, 570 S.E.2d 440, 484 (2002), and, "absent the [claimed] error, the jury probably would have reached a different result." *State v. Jones*, 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002).

Defendant correctly contends that, where warranted, (1) a trial court's failure to include a possible verdict of not guilty by reason of self-defense in its final mandate to the jury results in prejudicial error entitling a defendant to a new trial and (2) that failure is not cured by a discussion of the law of self-defense in the body of the charge. *State v. Dooley*, 285 N.C. 158, 165-66, 203 S.E.2d 815, 820 (1974). The failure to charge the jury with self-defense entitled the defendant in *Dooley* to a new trial because "the jury could have assumed that a verdict of not guilty by reason of self-defense was not a permissible verdict in the case." *Id.*, 285 N.C. at 165, 203 S.E.2d at 820. In *Dooley*, our Supreme Court set forth a model instruction for charging the jury as to the proper mandate for not guilty by reason of self-defense, but rigid adherence to this model instruction is not required where the trial court "adequately explain[s] to the jury that they can find the defendant not guilty by reason of self-defense." *State v. Bevin*, 55 N.C. App. 476, 477, 285 S.E.2d 873, 873 (1982).

In the instant case, the trial court correctly discussed the law of self-defense in the body of its charge to the jury. In its final mandate, the trial court instructed as follows:

> Finally, if the state has failed to satisfy you beyond a reasonable doubt that the defendant did not act in self-defense, then the defendant's action would be justified by self-defense and therefore, you would return a verdict of not guilty.

The trial court's instruction was not plainly erroneous for failing to adequately explain to the jury that they were permitted to find defendant acted in self-defense, and, that if they so found, the proper course of action would be to find defendant not guilty as a result. This assignment of error is overruled.

III. Short-Form Indictment

[3] In the instant case, the State utilized the short-form murder indictment for charging defendant with the offense of first-degree murder. Defendant asserts the use of the short-form indictment violated his state and federal constitutional rights. Our Supreme Court has rejected defendant's constitutional attacks on the short-form indictment with respect to all cases cited by defendant except for one. *See State v. Morgan*, 359 N.C. 131, 147, 604 S.E.2d 886, 896 (2004). The sole exception defendant cites is the United State Supreme Court holding in *Blakely v. Washington*, —— U.S. ——, 159 L. Ed. 2d 403 (2004) that a trial court alone may not sentence a defendant in excess of the "statutory maximum" absent either findings in aggravation by a jury or a waiver by defendant of his Sixth Amendment right to a trial by jury. In the instant case, defendant received the presumptive term for the charge with which he was convicted. Moreover, our Supreme Court has noted that the law of this State requires that, "whenever a defendant is charged with murder, questions of fact related to guilt or innocence . . . must be determined by the jury[.]" *State v. Braxton*, 352 N.C. 158, 175, 531 S.E.2d 428, 438 (2000). We are unpersuaded that this holding, especially in light of North Carolina's long adherence to the use of the short-form murder indictment, renders that use constitutionally unsound. This assignment of error is overruled.

No error.

Judges McGEE and TIMMONS-GOODSON concur.