STATE OF NORTH CAROLINA v. BILLY RAYMOND ANDERSON

No. 269A00

(Filed 1 February 2002)

**1. Jury— selection—capital trial—instructions—personal views**

The trial court neither erred nor abused its discretion during jury selection in a first-degree murder prosecution by denying defendant's request for a preselection instruction advising prospective jurors that it was their duty to reflect upon their personal views when deliberating the issue of punishment. Defendant waived review of constitutional challenges by not asserting them at trial, similar instructions have previously been rejected, and the court properly instructed the jury that its duty was to apply the law as given to it by the trial court.

**2. Jury— selection—capital trial—prosecutor's questions— duty to vote for death penalty**

There was no plain error during jury selection in a first-degree murder prosecution where defendant alleged that the prosecutor was permitted to stake out and indoctrinate prospective jurors by suggesting that they would have a duty to vote for the death penalty and by asking if they would vote to impose the sentence if they were satisfied that it was appropriate.

**3. Jury— selection—capital trial—prosecutor's questions— no structural error**

There was no structural error in a first-degree murder prosecution from the prosecutor's comments and questions during jury selection. Structural error is a defect affecting the framework in which the trial proceeds rather than simply an error in the trial process. The error asserted here does not fit within that limited class of cases.

**4. Constitutional Law— effective assistance of counsel—concession of guilt**

A first-degree murder defendant did not have ineffective assistance of counsel where his counsel conceded guilt to some degree of homicide but continued to adhere to the plea of not guilty.

**5. Criminal Law— concession of guilt—mentally retarded defendant—inquiry by court**

The trial court in a capital first-degree murder prosecution did not fail to conduct an adequate inquiry into defendant's consent to the defense tactic of admitting guilt to some degree of homicide. Defendant was articulate and coherent when questioned by the trial court and there was nothing to suggest that he had been coerced or cajoled into giving his approval. The trial court's inquiry of defendant was sufficient, in light of defendant's mental limitations, to determine whether he knowingly, voluntarily, and intelligently consented to the defense tactic.

**6. Jury— selection—capital trial—"strike and replace" method**

The trial court did not err in a first-degree murder prosecution by employing the "strike and replace" method of jury selection as mandated by N.C.G.S. § 15A-1214. It is within the province of the legislature to prescribe the method by which jurors are selected, challenged, impaneled, and seated.

**7. Jury— selection—capital trial—individual voir dire denied**

There was no abuse of discretion in a capital prosecution for first-degree murder where the trial court denied defendant's pretrial motion for individual voir dire and sequestration and defendant did not renew his request after the responses which he contends tainted the venire. Moreover, a similar argument was rejected in a prior case.

**8. Sentencing— capital—motion for appropriate relief—mental retardation**

A first-degree murder defendant's motion in the Supreme Court seeking relief from his death sentence on the ground that he is mentally retarded was remanded to superior court where the materials before the Supreme Court were not sufficient to determine the motion. N.C.G.S. § 15A-2006.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Haigwood, J., on 26 October 1999 in Superior Court, Craven County, upon a jury verdict finding defendant guilty of first-degree murder. On 19 October 2000, the Supreme Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of an additional judgment. Heard in the Supreme Court 11 September 2001.

STATE v. ANDERSON

[355 N.C. 136 (2002)]

*Roy Cooper, Attorney General, by Barry S. McNeill, Special Deputy Attorney General, and Diane A. Reeves, Assistant Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Janet Moore, Assistant Appellate Defender, for defendant-appellant.*

*Smith Helms Mulliss & Moore, LLP, by Neil A. Riemann, on behalf of the American Civil Liberties Union of North Carolina Legal Foundation, the Arc of the United States, the Arc of North Carolina, and the North Carolina Chapter of the American Association on Mental Retardation, amici curiae.*

BUTTERFIELD, Justice.

Defendant Billy Raymond Anderson was indicted on 21 July 1998 for the first-degree murder and first-degree rape of Lorraine Watson. Defendant was tried capitally, and the jury returned a verdict of guilty of first-degree murder upon the theories of malice, premeditation, and deliberation and felony murder. The jury also found defendant guilty of first-degree rape. Following a capital sentencing proceeding, the jury recommended that defendant be sentenced to death for the murder conviction, and the trial court sentenced him accordingly. The trial court also sentenced defendant to a consecutive term of 384 to 470 months' imprisonment for the rape conviction. Defendant appeals to this Court as of right from the sentence of death, and on 19 October 2000, this Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of the rape conviction. Thereafter, on 29 August 2001, defendant filed with this Court a motion for appropriate relief from his death sentence on the grounds that he is mentally retarded, as defined in N.C.G.S. § 15A-2005. For the reasons that follow, we hold that defendant received a fair trial, free of prejudicial error. However, we remand this matter to the trial court for a determination of defendant's motion for appropriate relief.

At trial, the State presented evidence tending to show that defendant and the victim were engaged to be married and that, on the morning of 7 July 1998, the victim informed defendant that she wanted to break off the engagement. She also told defendant, who had been living in a mobile home on her parents' property, that she wanted him to move back to Fayetteville with his family. Later that evening, while the couple was cleaning the Vanceboro Medical Center, their part-time job, defendant pleaded with the victim not to terminate their relationship. The victim, nevertheless, remained

STATE v. ANDERSON

[355 N.C. 136 (2002)]

adamant about the breakup. Infuriated, defendant pulled out a knife and commanded the victim to have sex with him. Shortly after penetrating the victim, defendant interrupted the sex act. When the victim attempted to flee, defendant attacked her with the knife, cutting her numerous times. He then grabbed an electrical cord from medical equipment that was mounted to the wall and tied the cord around the victim's neck. He also wrapped electrical cords around her left arm and leg.

The following morning, an employee of the medical center discovered the victim lying on the floor of one of the examination rooms. The victim was unclothed, and the cord around her neck suspended her head off the floor. During an autopsy of the victim's body, the medical examiner noted at least seventy-five knife wounds. He concluded that none of these wounds were fatal and that the victim died by asphyxiation. On 9 July 1998, defendant turned himself in to the police and gave a statement confessing to the murder.

PRETRIAL AND JURY SELECTION

[1] Defendant first argues that the trial court erred in denying his request for a preselection instruction advising prospective jurors that it was their duty to reflect upon their personal views when deliberating the issue of punishment. In pertinent part, the requested instruction reads as follows:

It is acceptable for jurors to possess varying views about the circumstances under which they may feel that the punishment of death should be imposed. When determining those matters in the course of deliberations which call for jurors to make subjective judgments, *you are expected, indeed required, to bring your personal views into play*. In this manner jurors as a group operate to express the conscience of the community on the ultimate question of life or death.

(Emphasis added.) Defendant claims that the court's failure to give the requested instruction violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as Article I, Sections 19, 23, and 24 of the North Carolina Constitution. Defendant contends that the instruction was in accordance with federal constitutional law, which requires jurors in a capital case to provide a "reasoned moral response" to the evidence presented. *See, e.g., Penry v. Lynaugh*, 492 U.S. 302, 319, 106 L. Ed. 2d 256, 279 (1989). Further, defendant contends that jurors in

North Carolina mistakenly believe that the law prefers the death penalty to life imprisonment and that death is the only legitimate punishment for murder. Therefore, defendant argues, it was incumbent upon the trial court to instruct prospective jurors as requested in order to alleviate their confusion. We find defendant's arguments unpersuasive.

At the outset, we note that defendant did not assert at trial any constitutional basis in support of his request for the instruction. Thus, he has waived appellate review of his constitutional challenges to the court's ruling. *See* N.C. R. App. P. 10(b)(1); *State v. Hyde*, 352 N.C. 37, 43, 530 S.E.2d 281, 290 (2000), *cert. denied*, 531 U.S. 1114, 148 L. Ed. 2d 775 (2001). The only question properly before us, then, is whether the trial court abused its discretion in declining to instruct the jury per defendant's request. We conclude that it did not.

The trial court is responsible for overseeing the *voir dire* of prospective jurors and for resolving all issues concerning their fitness to serve. *State v. Black*, 328 N.C. 191, 196, 400 S.E.2d 398, 401 (1991). To that end, "[t]he trial court has broad discretion to see that a competent, fair, and impartial jury is impaneled, and its rulings in that regard will not be reversed absent a showing of an abuse of its discretion." *State v. Conaway*, 339 N.C. 487, 508, 453 S.E.2d 824, 837-38, *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995).

In *State v. Meyer*, 353 N.C. 92, 540 S.E.2d 1 (2000), *cert. denied*, —— U.S. ——, 151 L. Ed. 2d 54 (2001), this Court considered and rejected a similar instruction concerning the role of an individual juror's personal views in the deliberation process. In that case, the defendant asked the trial court to instruct prospective jurors, in pertinent part, as follows:

"If the jury unanimously finds the existence of an aggravating circumstance, it will be your duty to consider both Life Imprisonment and the Death Penalty, *regardless of your personal views concerning capital punishment. However, you should know that it is acceptable for jurors to have different views about what circumstances call for the death penalty, and to use their personal views in deciding whether the mitigating circumstances outweigh the aggravating circumstances or when deciding whether the aggravating circumstances, when considered with any mitigating circumstances, are sufficiently substantial to call for the death penalty.*"

*Id.* at 103, 540 S.E.2d at 7-8 (emphasis in original). During the charge conference at the conclusion of the sentencing proceeding, the defendant requested the following similar instruction:

> "Each of you has expressed varying views about the circum-stances under which you might feel that the punishment of death should be imposed. You were selected to serve on this jury because of and not in spite of those differences. When determin-ing those matters in the course of your deliberations which call for you to make subjective judgments, you are expected, indeed required, to bring your personal views into play."

*Id.* at 104, 540 S.E.2d at 8. The trial court declined both requests. In holding that the trial court ruled appropriately, this Court reasoned that the requested instructions misrepresented the applicable law and would have "confuse[d] jurors regarding their duties in a capital case by inviting personal views to trump the rule of law." *Id.* at 105, 540 S.E.2d at 9. The same reasoning applies here, inasmuch as the language of defendant's requested instruction is indistinguishable from that deemed erroneous in *Meyer*. Furthermore, the trial court in the present case properly instructed the jury that its duty was to apply the law as given to it by the trial court, which accurately con-veyed to the jury its role in determining defendant's sentence. Accordingly, we hold that the trial court neither erred nor abused its discretion by refusing to give the requested instruction.

[2] Further, defendant contends that, in violation of his rights under the federal and state Constitutions, the trial court permitted the pros-ecutor to indoctrinate prospective jurors by suggesting that they would have a duty to vote to impose the death penalty. The following fairly represents the tenor of the remarks to which defendant takes exception:

> This is the real thing. Not television, not a movie, this is a real jury. We have got a real victim, Lorraine Watson was murdered as [sic] the defendant that sits here in this courtroom, and we believe based on this evidence and this law, that death is going to be the appropriate sentence in this case.
>
> . . . .
>
> So, I cannot overemphasize to any of you jurors that this is not just an exercise. That if you say I can sit on this jury, that we believe that you will believe that it's your duty at the end of this trial to vote to impose the death sentence.

STATE v. ANDERSON

[355 N.C. 136 (2002)]

Defendant also contends that the prosecutor attempted to "stake-out" prospective jurors as to their sentence recommendation by asking questions of the following type: "And if you were satisfied in this case that based on the facts, the law and instructions that death was the appropriate sentence in this case, would you vote to impose the sentence, sir?" Defendant concedes that he did not object to any of the prosecutor's statements or questions at trial; therefore, he now seeks to rely on the doctrines of "plain error" and "structural error."

Generally, a purported error, even one of constitutional magnitude, that is not raised and ruled upon in the trial court is waived and will not be considered on appeal. *State v. Smith*, 352 N.C. 531, 557-58, 532 S.E.2d 773, 790 (2000), *cert. denied*, 532 U.S. 949, 149 L. Ed. 2d 360 (2001); *see also State v. Nobles*, 350 N.C. 483, 498, 515 S.E.2d 885, 895 (1999) ("the rule is that when defendant fails to object during trial, he has waived his right to complain further on appeal"). Rule 10(c)(4) of our Rules of Appellate Procedure provides that an alleged error not otherwise properly preserved may, nevertheless, be reviewed if the defendant "specifically and distinctly contend[s]" that it amounted to plain error. This Court has recognized that "[t]he plain error rule applies only in truly exceptional cases," *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986), and that a defendant relying on the rule bears the heavy "burden of showing . . . (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial," *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997). Examining the prosecutor's statements in the context of the entire record, we conclude that defendant has failed to make such a showing. Moreover, this Court has previously limited application of the plain error doctrine to jury instructions and evidentiary matters. *See, e.g., State v. Atkins*, 349 N.C. 62, 505 S.E.2d 97 (1998), *cert. denied*, 526 U.S. 1147, 143 L. Ed. 2d 1036 (1999). Thus, defendant's plain error argument fails.

[3] Defendant's argument that the prosecutor's allegedly improper comments and questions constituted "structural error" is equally unavailing. As the United States Supreme Court explained in *Arizona v. Fulminante*, 499 U.S. 279, 310, 113 L. Ed. 2d 302, 331 (1991), "structural error" is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Additionally, the Supreme Court has found structural error to exist in very few cases. *See, e.g., Sullivan v. Louisiana*, 508 U.S. 275, 124 L. Ed. 2d 182 (1993) (erroneous instruction to jury on reasonable

doubt); *Vasquez v. Hillery*, 474 U.S. 254, 88 L. Ed. 2d 598 (1986) (unlawful exclusion of jurors of defendant's race); *Waller v. Georgia*, 467 U.S. 39, 81 L. Ed. 2d 31 (1984) (deprivation of right to public trial); *McKaskle v. Wiggins*, 465 U.S. 168, 79 L. Ed. 2d 122 (1984) (deprivation of right to self-representation at trial); *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799 (1963) (total deprivation of the right to counsel); *Tumey v. Ohio*, 273 U.S. 510, 71 L. Ed. 749 (1927) (absence of impartial trial judge). The error asserted here does not fit within this limited class of cases. Therefore, this argument too must fail.

[4] Next, we consider defendant's contention that the trial court erred by allowing defense counsel to concede defendant's guilt to some degree of homicide. During jury *voir dire* and as part of the defense strategy, counsel for defendant acknowledged defendant's responsibility for cutting the victim multiple times and strangling her to death. Defendant contends that this strategy denied him the right to effective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution.

In *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985), this Court espoused the following two-part test for resolving ineffective assistance of counsel claims:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable*."

*Id.* at 562, 324 S.E.2d at 248 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)) (alteration in original). Here, defendant acknowledges that counsel repeatedly advised the prospective jurors that the defense's factual admissions did not constitute a declaration of defendant's guilt of first-degree murder. Defendant contends, however, that counsel was ineffective for failing to further explain that the admissions similarly were not intended to concede defendant's guilt of first-degree rape or first-degree murder under the theories of felony murder or murder by torture. Defendant argues that without the additional explanation, the jurors were left

with the impression that defendant was admitting his guilt to these crimes.

We do not believe that defense counsel's failure to expressly deny defendant's guilt of the offenses charged under all viable theories was error, much less error " 'so serious as to deprive the defendant of a fair trial.' " *See id.* (quoting *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693). Notwithstanding the defense's factual admissions, defendant continued to adhere to his plea of not guilty, which necessarily denied the truth of all material facts tending to establish his guilt. The admission that defendant cut and strangled the victim did not negate his plea, nor did it "relieve the State of the burden of proving its entire case beyond a reasonable doubt as long as defendant stood on his plea of not guilty." *State v. Cutshall*, 278 N.C. 334, 347, 180 S.E.2d 745, 753 (1971). Therefore, defendant's claim that his counsel provided him ineffective assistance is unpersuasive.

**[5]** Additionally, defendant argues that the trial court failed to conduct an adequate inquiry into whether he knowingly, voluntarily, and intelligently consented to the defense tactic, given his mental retardation and mental illness. After a careful review of the record, we cannot agree.

The record shows that prior to allowing defense counsel to proceed with the admissions, the trial court asked him whether he had discussed the strategy with defendant and whether defendant understood the nature and consequences of the admissions. In response, defense counsel, Mr. Mills, assured the trial court, "Mr. Anderson understands that by admitting that, . . . that he admits that he committed a crime. He does not admit that he committed first-degree murder." The trial court then went on to question defendant about his understanding of the proposed strategy:

[THE COURT:] Tell me sir, is this something, do you understand what Mr. Mills has said to the Court?

A. Yes, your Honor, I, I fully understand what Mr. Mills and Mr. Jerry Redfern [co-counsel for defendant] are saying.

Q. Tell me how far have you gone [in] school?

A. Twelfth grade.

Q. Do you read and write?

A. Yes, sir.

Q. Do you understand the English language?

A. Well, I am a slow learner, but I can learn.

Q. Graduated from high school?

A. Yes, sir, twelfth.

Q. Do you have any questions about . . . what Mr. Mills proposes to do?

A. Yes, sir, I got one question but—

The trial court then directed defense counsel to leave the courtroom with defendant to confer with him regarding his question. Upon their return to the courtroom, the trial court resumed his questioning of defendant:

Q. Mr. Anderson, have you had an opportunity during that period of time to talk with your attorneys about the question that you had?

A. Yes, sir.

Q. Do you have any question of the Court at this time?

A. No, sir.

Q. Then, based upon what Mr. Mills has described that he proposes to do, is this something that you agree with, sir?

A. Yes, sir.

. . . .

Q. . . . Is this something that you want him to do as a part of his representation of you? That is, do you want him to say the things that he has describ[ed] he proposes to say to the jury?

A. Yes, sir.

. . . .

Q. You talked about it prior to today with him?

A. Yes, sir. We had talked about it again. I mean, many times we talked about it.

Q. Many, many times?

A. And even Mr. Redfern talked about it.

. . . .

Q. Mr. Anderson, specifically, Mr. Anderson, I have heard your attorney say that . . . he proposes to acknowledge to the jury that you in fact stabbed the victim in this case numerous times and strangled her to death.

A. Yes, sir. I fully understand Mr. Mills and Mr. Jerry Redfern. I fully understand that.

. . . .

Q. And you agree with that . . . and are directing them and authorizing them to acknowledge that you, for them to say to the jury that you stabbed the victim numerous times and strangled her to death?

A. Yes, sir. I fully understand that.

Q. And you agree . . . with it, and authorize them to say that?

A. Yes, sir.

We are satisfied that the trial court conducted a thorough inquiry, sufficient to determine whether—in light of defendant's mental limitations—he knowingly, voluntarily, and intelligently consented to the defense tactic. When questioned by the trial court about the matter, defendant was both articulate and coherent. Moreover, there is nothing in the record to suggest that defendant had been coerced or cajoled into giving his approval. Hence, we discern no error in the trial court's decision allowing defense counsel to admit defendant's guilt to some degree of homicide. Defendant's argument, then, is without merit.

[6] Defendant further argues that the trial court committed reversible error by employing the method of jury selection mandated by N.C.G.S. § 15A-1214. Under the statute, the State has the first opportunity to question prospective jurors and exercise its challenges. N.C.G.S. § 15A-1214(d) (1999). As a juror is excused, either for cause or by peremptory challenge, the clerk calls a replacement into the box until the State is satisfied with a panel of twelve jurors. *Id.* Thereupon, the State passes the twelve to the defendant, who then questions the jurors tendered to him and exercises his challenges. N.C.G.S. § 15A-1214(e). Once the defendant indicates his satisfaction with the remaining jurors, the clerk calls replacements for those

excused. *Id.* The State then examines and exercises its challenges only as to the replacement jurors until the box contains twelve jurors satisfactory to the State. N.C.G.S. § 15A-1214(f). The State passes the replacement jurors to the defendant to be examined and challenged, and the process is repeated until both parties have accepted twelve jurors. *Id.*

Prior to trial, defendant objected to the statutory procedure, sometimes referred to as the "strike and replace" method, on the grounds that it violated his rights to due process and equal protection. Defendant claimed that the method gave the State an unfair advantage over him by allowing it a larger pool from which to select favorable jurors and by affording it a better opportunity to compare replacement jurors with remaining jurors. Defendant, therefore, moved for an alternate selection method whereby replacement jurors would be called and examined during defendant's *voir dire* until the defense was satisfied with the twelve jurors remaining in the box. The trial court denied defendant's motion and, in doing so, ruled correctly.

It is within the province of the legislature to prescribe the method by which jurors are selected, challenged, impaneled, and seated. We believe that in enacting N.C.G.S. § 15A-1214, the legislature intended to provide uniformity in the selection of jurors in criminal cases. The trial court followed the statutory procedure and, therefore, committed no error. Moreover, we discourage and disapprove of the use of methods that violate the mandate of N.C.G.S. § 15A-1214. Thus, we reject defendant's argument.

**[7]** Defendant also challenges as error the trial court's refusal to direct that prospective jurors be questioned separately. "In capital cases the trial judge for good cause shown may direct that jurors be selected one at a time, in which case each juror must first be passed by the State. These jurors may be sequestered before and after selection." N.C.G.S. § 15A-1214(j). This Court has stated that "[N.C.G.S. § 15A-1214(j)] gives neither party an absolute right to such a procedure." *State v. Murphy,* 321 N.C. 738, 740, 365 S.E.2d 615, 617 (1988). Instead, whether to allow individual *voir dire* and sequestration of prospective jurors is a decision squarely within the discretion of the trial court and will not be overruled on appeal unless the party challenging the ruling establishes an abuse of that discretion. *Hyde,* 352 N.C. at 46, 530 S.E.2d at 288. The challenging party must show that the trial court's ruling, when made, " 'was so arbitrary that it

could not have been the result of a reasoned decision.' " *Id.* (quoting *State v. Barts*, 316 N.C. 666, 679, 343 S.E.2d 828, 837 (1986)).

In the instant case, defendant filed a pretrial motion for individual *voir dire* and sequestration of prospective jurors. As grounds for the motion, defendant cited concerns that prospective jurors would become contaminated by the responses of those who had been exposed to the "[e]motionally charged and prejudicial publicity" surrounding the case. Additionally, defendant claimed that collective *voir dire* would preclude jurors from responding candidly and honestly to sensitive and potentially embarrassing questions about their views on capital punishment. The trial court denied defendant's motion. Defendant renewed his motion shortly after the venire was assembled, and it too was denied.

Defendant argues that because the record demonstrates prejudice in the jury selection process, the trial court's ruling was reversible error. Specifically, defendant contends that the venire was tainted when one juror expressed an opinion about defendant's guilt, another "broke down" and wept upon recalling her experience as a rape victim, and yet another made statements tending to discredit psychological experts. Notably, however, defendant did not renew his request for individual *voir dire* at any time after these responses were given. Therefore, review of this issue is waived. In any event, this Court rejected a similar argument in *Hyde*, stating,

Taken to its logical conclusion, defendant's argument would require individual *voir dire* in every capital case to avoid the potential of a prospective juror saying something unexpected. We conclude that defendant has failed to demonstrate any prejudice in the manner in which the jury was selected and how the trial court abused its discretion in denying defendant's motion.

*Id.* at 50, 530 S.E.2d at 290-91. As in *Hyde*, we hold that the trial court committed no abuse of discretion by denying defendant's request. We, therefore, overrule defendant's argument.

## ADDITIONAL ISSUES

Defendant raises two additional issues pertinent to guilt-innocence that he concedes this Court has previously decided contrary to his position: (1) that the trial court committed constitutional error in denying defendant's motion to dismiss the short-form murder indictment for first-degree murder and (2) that the trial court committed reversible error in excusing nine prospective jurors for cause

because of their inability to return a sentence of death. Defendant raises these issues for purposes of inviting this Court to reconsider its prior holdings and for purposes of preserving these issues in the event of further review. Having considered defendant's arguments on these issues, we find no compelling reason to depart from our prior holdings. Therefore, these arguments are overruled.

## DEFENDANT'S MOTION FOR APPROPRIATE RELIEF

[8] Recently, the General Assembly amended our capital punishment statutes to include legislation, effective 1 October 2001, that exempts mentally retarded defendants from receiving the death penalty. Act of Aug. 4, 2001, ch. 346, sec. 1, 2001 N.C. Sess. Laws 45, 45 (adopting N.C.G.S. § 15A-2005). In addition, this legislation makes available post-conviction relief to mentally retarded defendants who have already been sentenced to death. Ch. 346, sec. 3, 2001 N.C. Sess. Laws at 46-47 (adopting N.C.G.S. § 15A-2006). Specifically, N.C.G.S. § 15A-2006 provides as follows:

In cases in which the defendant has been convicted of first-degree murder, sentenced to death, and is in custody awaiting imposition of the death penalty, the following procedures apply:

(1) Notwithstanding any other provision or time limitation contained in Article 89 of Chapter 15A, a defendant may seek appropriate relief from the defendant's death sentence upon the ground that the defendant was mentally retarded, as defined in G.S. 15A-2005(a), at the time of the commission of the capital crime.

(2) A motion seeking appropriate relief from a death sentence on the ground that the defendant is mentally retarded[] shall be filed:

a. On or before January 31, 2002, if the defendant's conviction and sentence of death were entered prior to October 1, 2001.

b. Within 120 days of the imposition of a sentence of death, if the defendant's trial was in progress on October 1, 2001. For purposes of this section, a trial is considered to be in progress if the process of jury selection has begun.

(3) The motion, seeking relief from a death sentence upon the ground that the defendant was mentally retarded,

shall comply with the provisions of G.S. 15A-1420. The procedures and hearing on the motion shall follow and comply with G.S. 15A-1420.

Pursuant to this new legislation, defendant has filed with this Court a motion for appropriate relief from his death sentence. The materials before this Court are insufficient to enable us to rule on defendant's motion. Therefore, we remand this matter to the superior court for a determination of defendant's motion for appropriate relief. Given our ruling in this regard, we do not reach defendant's arguments pertaining to the sentencing proceeding.

For the reasons stated in the opinion, we find no error at the guilt-innocence phase of defendant's trial; however, we remand for a hearing on defendant's motion for appropriate relief.

NO ERROR IN GUILT-INNOCENCE PHASE; CASE REMANDED FOR A HEARING ON DEFENDANT'S MOTION FOR APPROPRIATE RELIEF.