STATE OF NORTH CAROLINA v. HAROLD BRIGHT HARRIS, JR.

No. COA11-829

(Filed 17 July 2012)

**1. Criminal Law—prosecutor's statements—closing argument—defendant's decision not to testify—not grossly improper**

The trial court did not abuse its discretion in a sexual offenses case by failing to intervene *ex mero motu* during the prosecutor's closing argument. The challenged comment emphasized the limitations of the physical evidence and did not function as a comment on defendant's decision not to testify. Therefore, the comment failed to meet the standard of gross impropriety necessary to require the trial court to intervene *ex mero motu*.

**2. Constitutional Law—testimony—DNA analysis results—supervising agent—confrontation clause not violated**

The trial court did not commit plain error in a sexual offenses case by allowing a serologist SBI Special Agent to testify to the significance of DNA analysis results obtained by SBI trainee Applebee. Trainee Applebees' analysis was done under the supervision of Agent Boodee and the admission of Agent Boodee's testimony regarding the DNA evidence did not violate defendant's right to confrontation. Defendant could not reasonably contend that the admission of the serologist's testimony, premised on the testimony of Agent Boodee, violated defendant's right to confrontation.

**3. Constitutional Law—right to confrontation—testimony— probability—unavailability of purported population geneticists—not prejudicial—no ineffective assistance of counsel**

The trial court did not commit plain error in a sexual offenses case by allowing into evidence an SBI agent's testimony that the probability of an unrelated, randomly chosen person who could not be excluded from the DNA mixture taken from the victim's rape kit was extremely low. Even presuming that the unavailability of the purported population geneticists who prepared the statistical data violated defendant's right to confrontation, the admission of the statistical data did not so prejudice defendant that the jury would have reached a different result had the data not been presented. Defendant's ineffective assistance of counsel claim based on this same argument was also overruled.

**4. Appeal and Error—preservation of issues—prosecutor's closing argument—no ineffective assistance of counsel**

Defendant failed to preserve for appellate review the argument that the trial court erred in a sexual offenses case by allowing the prosecutor to make an argument not supported by the evidence. Furthermore, defendant's argument that he received ineffective assistance of counsel based upon trial counsel's failure to preserve defendant's argument for appellate review was overruled. Given the record evidence, there was no reasonable probability that had there been an objection by defense counsel during the prosecutor's closing argument the outcome of the trial would have been different.

Appeal by defendant from judgment entered 27 January 2011 by Judge Lindsay R. Davis, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 11 January 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Anita LeVeaux, for the State.*

*Mark Montgomery for defendant-appellant.*

BRYANT, Judge.

Where the trial court did not abuse its discretion in failing to intervene *ex mero motu* because the prosecutor commented that "only two people in this courtroom . . . actually know what happened," where the admission of testimony from a serologist regarding

a comparison of DNA profiles did not amount to plain error, and because we do not review contentions arising out of closing arguments for plain error, we hold there was no error in the judgment of the trial court.

On 25 January 2011, a criminal trial against defendant Harold Harris, Jr., was commenced before a Forsyth County Superior Court jury. Defendant was charged with first-degree rape of a child, three counts of first-degree sexual offense with a child, first-degree kidnapping, and taking indecent liberties with a child. At the time of trial, the victim, Zora[1], defendant's step-daughter, was sixteen years old; defendant was fifty.

Zora testified that when she was ten years old, on 19 November 2004, at some time after 9 p.m., defendant drove her down Linville Road, then onto a side street in an unfamiliar residential area. When the vehicle stopped, Zora attempted to get out, but defendant pulled her back in and struck her in the face. Zora testified that after her pants and underwear were removed, defendant undressed, digitally penetrated her vagina, performed cunnilingus, and inserted his penis into her vagina. This occurred over the course of an hour. Zora testified that on the way home, "[h]e told me if I told anybody that he would kill me, that he would kill my mother, and that he would kill himself." Zora confided in her mother the next morning. Testimony was also given by the sexual assault nurse examiner (SANE nurse) who examined Zora, as well as agents with the State Bureau of Investigation (SBI) who extracted and compared DNA samples from Zora and defendant.

In accordance with the jury verdict, the trial court entered a consolidated judgment against defendant for first-degree rape, first-degree sexual offense with a child, and second-degree kidnapping and another consolidated judgment for first-degree sexual offense with a child and taking indecent liberties with a child. The trial court sentenced defendant to two active terms of 420 to 513 months, to be served consecutively. Defendant appeals.

On appeal, defendant raises the following issues: whether the trial court committed plain error in allowing (I) the prosecutor to comment to the jury about the fact that defendant did not testify; (II) a serologist to testify about DNA analysis developed by a non-testifying

---

1. A pseudonym has been used to protect the victim's identity.

witness; and (III) the prosecutor to make an argument not supported by the evidence.

*I*

[1] Defendant first argues that the trial court committed plain error in failing to intervene when the prosecutor commented to the jury on the fact that defendant did not testify, and, alternatively, if this issue was not preserved for appellate review, defendant asks this Court to determine whether he received ineffective assistance of counsel. We disagree.

"Plain error analysis applies to evidentiary matters and jury instructions." *State v. Garcell*, 363 N.C. 10, 35, 678 S.E.2d 618, 634 (2009) (citation omitted). However, plain error does not apply to issues arising from closing arguments. *State v. Phillips*, 365 N.C. 103, 144, 711 S.E.2d 122, 150 (2011). Our Supreme Court has applied an abuse of discretion standard when considering whether a trial court erred in failing to intervene *ex mero motu* when a defendant failed to object at trial but, on appeal, alleged a prosecutor improperly commented on the defendant's decision not to testify. *See State v. Miller*, 357 N.C. 583, 588 S.E.2d 857 (2003).

Because [the] defendant did not object to this portion of the closing argument at trial, he carries the burden on appeal of showing the prosecutor's argument was so grossly improper that the trial court should have intervened *ex mero motu*. The impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it. In evaluating whether the prosecutor improperly commented on defendant's failure to testify, we must consider the prosecutor's comments in the context in which they were made and in light of the overall factual circumstances to which they referred.

*Id.* at 588-89, 588 S.E.2d at 862 (citations and quotations omitted).

Defendant focuses upon the following comment made during the prosecutor's closing argument: "There are only two people in this courtroom as we sit here today that actually know what happened between the two people, and that's [Zora] and the defendant." We note that the comment was made in the context of the prosecutor's acknowledgement that while the SANE nurse who examined Zora testified to abrasions and tears indicative of vaginal penetration, the

nurse could not tell if Zora's vagina was penetrated by a penis. The prosecutor went on to recount evidence that semen containing defendant's DNA was found on vaginal swabs taken from Zora as well as cuttings from Zora's panties.

We hold that the prosecutor's comment emphasized the limitations of the physical evidence and did not function as a comment on defendant's decision not to testify. Therefore, the comment fails to meet the standard of gross impropriety necessary to require the trial court to intervene *ex mero motu*. As such, we cannot find an abuse of discretion in the trial court's failure to intervene *ex mero motu*. In addition, we do not find this comment to have been sufficiently prejudicial to support an ineffective assistance of counsel claim. Accordingly, defendant's argument is overruled.

*II*

**[2]** Next, defendant argues that the trial court committed plain error in allowing serologist SBI Special Agent Mackenzie Dehaan to testify to the significance of DNA analysis results obtained in part by witnesses unavailable for cross-examination—primarily SBI trainee Jill Applebee. Alternatively, defendant requests that we consider whether, because counsel failed to object to the admission of evidence developed by witnesses unavailable for cross-examination, he received ineffective assistance of counsel.

SBI Agent Mark Boodee, qualified as an expert in forensic DNA analysis, was called to testify for the State regarding the procedure used in analyzing DNA found on articles from Zora's rape kit. During Agent Boodee's testimony, defendant learned that SBI trainee Jill Applebee performed the DNA analysis under the supervision of Agent Boodee and was not available to testify. Defendant objected to the testimony of Agent Boodee regarding the DNA analysis results on the ground that trainee Applebee was not available for cross-examination. The jury was then excused, and the prosecutor informed the trial court of the following:

> [Agent Boodee's] name is on all the paperwork as far as the analysis and the samples; and in further looking at the discovery provided by the State to the defense, it does show a J. A. as an initial on some of the documents on the testing. . . . [H]e [Agent Boodee] checked every single thing, and he wrote the opinion because she was a trainee and could not write the opinion.

**STATE v. HARRIS**

[221 N.C. App. 548 (2012)]

Thereafter, on voir dire, Agent Boodee testified regarding the DNA analysis performed on articles taken from Zora's rape kit. Agent Boodee testified that the SBI received from Zora's rape kit a blood stain, vaginal swabs, and a cutting from a pad taken from her panties. At the time, Agent Boodee was serving as a special agent assigned to the DNA unit and, also, assistant special agent in charge—a management position. While working on this case, Agent Boodee was assisted by trainee Applebee.

A.   As part of our trainee program, we oversee—or we watch trainees as they do the analysis, and she performed the analysis on this particular case. I stood over her shoulder. Watched every step of the process.

. . .

Q.   And when you say you watched every step, can you please tell [the Court] what steps.

A.   From—I accepted the evidence in this case. We would get the evidence out of the locker. We worked the evidence, meaning we extract the evidence. We amplified it, using PCR. We then separated it with the use of a genetic analyzer. We then got the results together. We looked at it side by side to determine what the results were. We then did the frequency data for this case as well. I wrote up the report, and I put it into review.

. . .

Q.   So the DNA analysis done by Jill Applebee was done under your scrutiny?

A.   Under my watch the entire time.

. . .

Q.   All right. And did you agree with her findings?

A.   Well, they were my findings. They were my findings, but I agreed with everything that she did.

After the voir dire, the trial court concluded that Agent Boodee's testimony regarding results of the DNA analysis reflected his own opinion, that he was not testifying to the opinion of someone else, and that he was present in court and available for cross-examination. The trial court overruled defendant's objection to the admission of Agent Boodee's testimony.

Agent Boodee testified before the jury as to the procedure used to extract DNA profiles from the items in Zora's rape kit: the blood stain, the vaginal swabs, and the pad taken from Zora's panties. Agent Boodee further testified to the results obtained upon comparing these DNA extracts to Zora's DNA profile.

Special Agent Agent Mackenzie Dehaan, qualified as an expert in DNA analysis and as a forensic molecular geneticist, testified regarding defendant's DNA. Agent Dehaan testified, without objection, that she performed a DNA extract on a specimen taken from defendant and compared defendant's DNA profile to the profiles obtained by Agent Boodee from specimens taken from Zora's rape kit. Agent Dehaan testified that the DNA from a cutting of the pad in Zora's rape kit matched defendant's DNA. Therefore, defendant could not be excluded as a contributor to the DNA mixture found on the samples from Zora's rape kit.

[Dehaan]: For the mixture that was obtained from the vaginal swabs, the estimates of the combined probability of inclusion—and what that means is the chance of selecting an individual at random who would also be expected to be included in this mixture—for this mixture—are for the North Carolina Caucasian population, 1 in 45.7 million; for the North Carolina black population, 1 in 9.63 million; for the North Carolina Lumbee Indian population, 1 in 10.3 million; and for the North Carolina Hispanic population, 1 in 6.49 million.

Agent Dehaan further testified as to the significance of the match. She stated that the odds of randomly selecting an individual unrelated to defendant with a DNA profile that matched the partial DNA profile taken from the sperm fraction found on the pad in Zora's panties was "1 in greater-than-one-trillion—which is more than the world's population . . . ."

On appeal, defendant contends that because Agent Dehaan's testimony on DNA profile comparisons was premised on tests performed by trainee Applebee—who was unavailable for examination—and on the basis of statistical information prepared by other, unknown, individuals, the admission of Agent Dehaan's testimony amounts to plain error. We disagree.

According to Rule of Appellate Procedure 10(a), "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the spe-

cific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1) (2012). "Generally, a purported error, even one of constitutional magnitude, that is not raised and ruled upon in the trial court is waived and will not be considered on appeal." *State v. Anderson*, 355 N.C. 136, 142, 558 S.E.2d 87, 92 (2002) (citations omitted); *see also, State v. Ray*, 364 N.C. 272, 277, 697 S.E.2d 319, 322 (2010) ("Generally speaking, the appellate courts of this state will not review a trial court's decision to admit evidence unless there has been a timely objection. To be timely, an objection to the admission of evidence must be made at the time it is actually introduced at trial. (citations and quotations omitted)).

> In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C. R. App. P. 10(a)(4) (2012).

> [Our Supreme Court] has recognized that "the plain error rule applies only in truly exceptional cases," *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986), and that a defendant relying on the rule bears the heavy "burden of showing . . . (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial," *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997).

*Anderson*, 355 N.C. at 142, 558 S.E.2d at 92.

Defendant acknowledges that he made a confrontation clause objection and argument before the trial court as to Agent Boodee's testimony, as premised on trainee Applebee's DNA analysis, but made no similar objection in relation to Agent Dehaan's testimony. Defendant now asks this Court to consider whether the admission of Agent Dehaan's testimony premised in part on trainee Applebee's DNA analysis amounted to a violation of defendant's confrontation clause rights rising to the level of plain error. We reject defendant's challenge in this regard.

At trial, Agent Dehaan testified without objection to DNA profile evidence based upon reports generated by Agent Boodee and trainee Applebee. Agent Boodee's testimony regarding the procedure used to

analyze DNA samples, the reports generated therefrom, and his con-
clusions, was subjected to direct and cross-examination. Defendant
objected to Agent Boodee's testimony arguing that the unavailability
of trainee Applebee violated his Sixth Amendment right to confront
the witnesses against him. Defendant's argument was overruled by
the trial court, and the trial court's ruling on that argument is not
challenged on appeal.

However, even a cursory review of defendant's contention leaves
little doubt that the admission of Agent Boodee's testimony regarding
DNA evidence did not violate defendant's right to confrontation.
Agent Boodee testified that the process trainee Applebee utilized to
obtain DNA profiles from specimens in Zora's rape kit was performed
under his observation and the findings reported as a result of the
analysis were his own. *See State v. Hough*, 202 N.C. App. 674, 682-83,
690 S.E.2d 285, 291 (2010) (where the analyst who testified asserted
his or her own expert opinion, even though she did not conduct the
original testing, there was no violation of the defendant's Sixth
Amendment right to confrontation as considered under *Crawford
v. Washington*, 541 U.S. 36, ____, 158 L. Ed. 2d 177, 187 (2004), and
*Melendez-Diaz v. Massachusetts*, ____ U.S. ____, ____, 174 L. Ed. 2d
314, 331 (2009). (citing *State v. Watts*, 172 N.C. App. 58, 67, 616 S.E.2d
290, 297 (2005), *modified on other grounds after remand*, 185 N.C.
App. 539, 648 S.E.2d 862 (2007) (holding that the defendant's right to
confrontation under *Crawford* was not violated where the analyst
who testified concerning DNA evidence testified to his own opinion
based on tests run by another analyst), reviewed in *Watts v. Thomas*,
2009 WL 3199891, at *5-6 (M.D.N.C. 25 September 2009) (reviewing a
petition for habeas corpus, "the federal court acknowledged that the
parties made arguments based on the holding of *Melendez-Diaz*;
however, the court's analysis focused on *Crawford* since that was the
only Supreme Court precedent available at the time of the defendant's
appeal in state court." Citing *Watts*, 2009 WL 3199891, at *5-6. "Ultimately,
the federal court held that this Court's analysis was not contrary to
the application of U.S. Supreme Court precedent and denied the
defendant's *habeas* petition." Citing *Watts* at *6.)).

Therefore, we do not view this issue in defendant's favor. Having
apparently accepted the trial court's ruling that the absence of trainee
Applebee did not result in a Confrontation Clause violation, that
would in turn result in the exclusion of evidence and testimony of
supervising Agent Boodee, defendant cannot reasonably contend that
the admission of Agent Dehaan's testimony—premised on the testi-

mony of Agent Boodee—amounted to a violation of defendant's Sixth Amendment right to confront the witnesses against him and rose to the level plain error. *Anderson*, 355 N.C. at 142, 558 S.E.2d at 92 ("a defendant relying on the rule bears the heavy "burden of showing . . . that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial[.]" (citation omitted)).

[3] Defendant also raises a Confrontation Clause challenge to Agent Dehaan's testimony that the probability of an unrelated, randomly chosen person who could not be excluded from the DNA mixture taken from Zora's rape kit was extremely low. Specifically, defendant argues that the population geneticists who made the probability determination were unavailable for cross-examination about the reliability of their statistical methodology. Again, this argument was not raised before the trial court. Defendant contends on appeal that this is a Confrontation Clause violation that rises to the level of plain error. We disagree.

Initially, we note that Agent Dehaan was available for cross-examination; that she gave her opinion that the DNA profile found on the pad from Zora's rape kit matched defendant's DNA profile; and that the statistical information upon which she relied in developing her opinion regarding the significance of the match was of a type reasonably relied upon by experts in the field of DNA analysis, such being admissible under North Carolina Rules of Evidence, Rule 703, "Bases of opinion testimony by experts." N.C. Gen. Stat. § 8C-1, Rule 703 (2011) ("If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."); *see also Williams v. Illinois*, No. 10-8505 (U.S. 18 June 2012) (upholding admissibility of testimony regarding DNA analysis based upon work performed by an outside laboratory despite the prosecution's failure to present testimony from an analyst employed by the outside laboratory); *State v. Appleby*, 289 Kan. 1017, 1059, 221 P.3d 525, 551 (2009) ("population frequency data and the statistical programs used to make that data meaningful are nontestimonial."). For that reason, we conclude the admission of the statistical information was not error.

But even presuming that the unavailability of the purported population geneticists who prepared the statistical data amounted to a violation of defendant's Sixth Amendment right to confront the witnesses against him, it does not follow that such a violation automatically rises to the level of plain error. *See State v. Walker*, 316 N.C. 33, 340 S.E.2d 80 (1986) (holding that an infringement on the defendant's

fundamental due process right, in the form of a comment on the defendant's silence by the prosecution, did not rise to level of plain error). To establish plain error, defendant must show "that a different result probably would have been reached but for the error . . . ." *Anderson*, 355 N.C. at 142, 558 S.E.2d at 92 (citation omitted).

In his brief to this Court, defendant argues that the statistics presented by Agent Dehaan "sealed [] defendant's fate" as evidence that "it was very unlikely that anybody other than [] defendant was the contributor" to the DNA mixture found on specimens taken from Zora's rape kit. However, we note other substantial and compelling evidence presented by the SANE nurse who examined Zora the morning after the sexual assault and who testified to the physical trauma she observed to Zora's vagina, by Zora's mother in whom Zora confided about the sexual assault and who testified to Zora's unusual behavior when she returned home with defendant, and to the change in Zora's general demeanor, and by Zora, sixteen years old at the time of trial, who testified about how, when she was ten years old, defendant lured her from her home, drove her to an unfamiliar residential area, struck her, physically restrained her, penetrated her vagina with his fingers, mouth, and penis, and then threatened her life, as well as, that of her mother to secure Zora's silence.

Reviewing the whole record, we cannot say that the admission of the statistical data upon which Agent Dehaan relied in forming her opinion so prejudiced defendant that the jury would have reached a different result had the data not been presented; this analysis presumes that the admission of the challenged evidence amounted to an error, which we do not. *See Williams v. Illinois, supra.* Accordingly, we overrule defendant's contentions regarding the admissibility of Agent Dehaan's testimony.

Alternatively, defendant asks that if he is "den[ied] relief under the plain error standard for prejudice that [this Court] would have granted under the constitutional standard for prejudice," we consider whether he received ineffective assistance of counsel. In support of his contention, defendant asserts only that "[i]t was unreasonable of trial counsel not to have objected to Agent DeHaan's [sic] testimony."

To successfully assert an ineffective assistance of counsel claim, defendant must satisfy a two-prong test. *See Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). First, he must show that counsel's performance fell below an objective standard of reasonableness. *See State v. Braswell*, 312 N.C. 553,

561-62, 324 S.E.2d 241, 248 (1985). Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different. *Id.* at 563, 324 S.E.2d at 248.

*State v. Gainey*, 355 N.C. 73, 112, 558 S.E.2d 463, 488 (2002).

Though defendant contends that "[i]t was unreasonable of trial counsel not to have objected to Agent DeHaan's [sic] testimony[,]" defendant does not contend that the error was "so serious that a reasonable probability exists that the trial result would have been different." *Id.* at 112, 558 S.E.2d at 488 (citation omitted). Further, as we have held that the admission of Agent Dehaan's testimony does not amount to error, let alone plain error, defendant cannot establish ineffective assistance of counsel. Accordingly, we reject defendant's ineffective assistance of counsel claim.

### III

**[4]** Defendant argues that the trial court committed plain error in allowing the prosecutor to make an argument not supported by the evidence. Specifically, defendant asserts that during her closing argument the prosecutor stated that both SBI Agents Boodee and Dehaan testified that swabs taken from Zora's vagina and samples from the pad in her panties contained defendant's DNA; however, defendant contends that the evidence merely provides that he could not have been excluded as a contributor to the DNA mixture.

We note that before the trial court defendant did not object to the statements and, on appeal, contends that the trial court's failure to intervene *ex mero motu* during the prosecutor's closing argument amounted to plain error. However, "[p]lain error analysis applies to evidentiary matters and jury instructions." *Garcell*, 363 N.C. at 35, 678 S.E.2d at 634 (citation omitted). As defendant did not preserve his argument contesting the prosecutor's closing argument by objection and has not explicitly argued that the prosecutor's argument was so egregious as to merit *ex mero motu* intervention, *see State v. Murrell*, 362 N.C. 375, 391, 665 S.E.2d 61, 73 (2008), *cert. denied*, 556 U.S. ____, 173 L. Ed. 2d 1099 (2009), we do not review the contested statements for plain error.

Defendant also asks this Court to consider whether he received ineffective assistance of counsel based upon trial counsel's failure to preserve defendant's argument for appellate review. *See Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698 ("The defendant must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

As stated in issue *II*, the record indicates that substantial and compelling evidence was presented in the form of testimony from Zora, Zora's mother, and the SANE nurse who examined Zora shortly after the assault. Witnesses qualified as experts in serology and forensic DNA analysis testified that defendant's DNA profile matched a DNA profile taken from a specimen found inside Zora's underwear, and that defendant's profile could not be excluded from a DNA mixture taken from Zora's vagina. Defendant did not present any evidence.

Given the record evidence, there does not exist a reasonable probability that had there been an objection by defense counsel during the prosecutor's closing argument the outcome of the trial would have been different. Accordingly, we hold that the failure of defendant's trial counsel to object to the contested portion of the prosecutor's closing argument does not constitute ineffective assistance of counsel.

No error.

Judges ELMORE and ERVIN concur.