IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-311

Filed 3 December 2024

Wake County, Nos. 21 CR 200398-910, 21 CR 200379-910

STATE OF NORTH CAROLINA

v.

MICHAEL GREGORY PLAZA, JR.

Appeal by Defendant from judgments entered 1 September 2023 by Judge Keith O. Gregory in Wake County Superior Court. Heard in the Court of Appeals 11 September 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Marc Bernstein, for the State.*

*Drew Nelson for the Defendant.*

WOOD, Judge.

Michael Gregory Plaza, Jr. ("Defendant") appeals from convictions finding him guilty of first-degree murder and possession of a firearm by a felon. Defendant was sentenced to life imprisonment without parole for first-degree murder and 21 to 35 months of imprisonment for possession of a firearm by a felon to commence at the expiration of the prior sentence. On appeal, Defendant argues the trial court admitted evidence outside the presence of the jury and allowed the jury to view improperly admitted evidence that had a probable impact on the jury's verdict. For

the reasons stated below, we conclude Defendant received a fair trial free from error.

## I.    Factual and Procedural Background

Andrea Lucas ("Lucas") lived at Mallory Court in Wake County. Lucas was like a grandmother to the kids in the neighborhood, many of whom would hang out in front of her house and play basketball.

In the weeks leading up to 6 January 2021, Defendant stayed with a variety of people, including a family who resided in the Mallory Court neighborhood. During one visit to that family's home, Defendant showed off a small, black pistol. During the week prior to 6 January 2021, Defendant "appeared out of nowhere" at Lucas' home and watched as the kids played basketball. On 3 January 2021, while standing outside Lucas' home, Defendant told Lucas' neighbor that "he was going to get her" because "God sent him . . . to take out the evil people and . . . to protect the kids." He also stated that Lucas was a witch and he "needed to kill [Lucas] in order to save . . . [Lucas'] soul."

On the night of 6 January 2021, Lucas' neighbor went out to his car and noted that Lucas was outside too. The neighbor heard gunshots, hid, but then saw a person dressed in all black or dark clothes flee the scene. Officers responded to a dispatch report of a shooting at Lucas' address where they found Lucas unresponsive, not breathing and with multiple bullet wounds. Seven spent cartridges from a nine-millimeter SIG Luger handgun were recovered at the scene by the crime scene investigator.

On the night of 8 January 2021, Officer Saylor was dispatched to a shopping center in Raleigh where a suspect in a homicide had been located and was reported to be possibly armed. Officer Saylor observed Defendant dressed in dark clothing and conducted a "voluntary encounter." During a weapons frisk, Officer Saylor found Defendant had a loaded, small, black pistol on his person. The pistol was identified as a diamondback nine-millimeter Luger semiautomatic holding seven rounds. Prior to the encounter police were aware that Defendant was a convicted felon and, after recovering a pistol, arrested Defendant for possession of a firearm by a felon.

The State's forensic firearms analyst examined the seven cartridges, and six bullets recovered during the investigation. The analyst conducted a comparative analysis of the microscopic characteristics of bullets recovered during the investigation to those of test bullets fired in the laboratory from the weapon recovered from Defendant. The expert concluded that the bullets recovered from Lucas' body had been fired from Defendant's pistol.

On 28 August 2023, Defendant came on for trial in Wake County Superior Court for first-degree murder and illegal possession of a firearm by a felon. At trial, Detective Harmon provided testimony and identified items related to the case. The State introduced a box containing a pistol, a magazine, and bullets. Detective Harmon identified the items inside the box as the pistol taken from Defendant's person during the weapons frisk. The prosecutor moved to admit the content of the box into evidence as State's Exhibit 12. The defense was given the opportunity to

object but did not. Thereafter, the trial court accepted State's Exhibit 12 into evidence. A few minutes later the prosecutor stated, "Your Honor, at this time I'd just move to publish by reference there's - - there were three items in that box, 12-A, the pistol itself; 12-B, the clip, or the magazine; and 12-C, the container containing the two bullets in this case." The trial court responded, "Mr. DA, if you will label 12-A, I think the clerk - - just for purposes of the record, if you will label 12-A, 12-B and 12-C. While he's doing that, any objection to the publication of those items to the jury?" The defense counsel responded, "no." The record indicates that State's Exhibits 12A – 12C were then marked for identification. The trial court then stated, "All right. The State will be allowed to publish State's Exhibit 12, which consists of 12-A, the weapon; 12-B, I believe the clip; and 12-C, the bullets."

After the testimony of another witness, the trial court called for a brief recess and the jury exited the courtroom. During the break, the prosecutor addressed the Court saying, "[j]ust for the purposes of the record and Madam Clerk, I'd move - - based on previous testimony of Detective Harmon, [I] already had moved State's Exhibit 12 into evidence. I would ask to move State's Exhibit 12-A, the pistol; 12-B, the magazine; and 12-C, the bullets, into evidence as well." The trial court asked the defense if there was any objection and the defense responded, "no." The trial court then accepted into evidence specifically exhibits 12-A, 12-B, and 12-C. Thereafter the jury returned to the courtroom.

On 31 August 2023 the jury found Defendant guilty of possession of a firearm

by a felon and on 1 September 2023 guilty of first-degree murder. The verdicts were read in open court on 1 September 2023. The trial court sentenced Defendant to life imprisonment without parole for the first-degree murder conviction and to 21 to 35 months of imprisonment for possession of a firearm by a felon to run at the expiration of the first sentence. Defendant gave notice of appeal in open court during sentencing.

## II.    Discussion

On appeal, Defendant argues the trial court erred by admitting evidence outside the presence of the jury, and by allowing the jury to view the improperly admitted evidence, contending it had a probable impact on the jury's verdict. We address each in turn.

A.    Admission of Evidence

N.C. R. App. P. 10(a)(1) requires that "to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."

At trial, Defendant neither objected to the admission of Exhibit 12, a box containing the pistol components, nor to the State's request to specify the three components of the pistol as 12-A, 12-B and 12-C when given the opportunity and specifically prompted by the Court to state any objections or concerns. Therefore, pursuant to N.C. R. App. P. 10(a)(1), Defendant failed to preserve this issue for

appeal. Conceding that no objection was raised at trial, Defendant argues for this Court to apply a plain error standard of review.

N.C. R. App. 10(a)(4) allows an issue unpreserved by objection to be raised on appeal when "the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. 10(a)(4). Our Supreme Court has made it clear plain error must "be applied cautiously and only in the exceptional case, [] is reserved for grave error which amounts to a denial of a fundamental right of the accused and []focuses on error that has resulted in a miscarriage of justice or the denial of a fair trial." *State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (internal citations and quotations omitted). In *Reber*, the Court set forth a three-factor test:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Id.* Under the second prong, a defendant must demonstrate that a jury "almost certainly" would have reached a different result had an error not occurred. *Id.* at 159, 900 S.E.2d 787. Defendant has failed to meet this burden.

The trial court properly admitted Exhibit 12 and then clearly listed exhibits 12-A, 12-B and 12-C as the components of Exhibit 12 when publishing them to the

jury. The trial court stated, "All right. The State will be allowed to publish State's Exhibit 12, which consists of 12-A, the weapon; 12-B, I believe the clip; and 12-C, the bullets." Both the prosecutor and defense attorney proceeded to treat all three components as properly admitted evidence during their questioning of the witnesses. For reasons unknown, in an apparent overabundance of caution, the prosecutor unnecessarily moved to have the previously admitted components: 12-A, 12-B, 12-C, "readmitted." That this exchange occurred out of the presence of the jury while the court was in recess is irrelevant to our consideration of the merits of this appeal.

In an unpublished but persuasive opinion, this Court previously held "it is apparent from the record before this Court that everyone at the trial considered the handgun to have been admitted into evidence. Given the conduct of all parties at the trial, defendant has failed to meet his burden under our plain error standard of review." *State v. Blount*, 184 N.C. App. 189, 645 S.E.2d 903 (2007)(unpublished). Even if the subcomponents of Exhibit 12 were not properly admitted until later outside the presence of the jury, both the State and Defendant treated it as admitted evidence and as a formal part of the record when it was published to the jury and during questioning of the witness.

Defendant has failed to cite any case law to support a determination of prejudicial error under the facts of this case or how he was prejudiced by the admission of the delineated items constituting Exhibit 12. We hold the trial court did not err, much less prejudicially err, by admitting exhibits 12A – 12C into evidence.

B.    Constitutional Right to Due Process

Defendant next argues admittance of the evidence violated his constitutional right to due process. However, to preserve an issue for appellate review, a defendant must object at trial and make a motion and receive a ruling from the court with respect to the constitutionality of the issue. Otherwise, the defendant fails to preserve the issue for appellate review. *State v. Elliott*, 344 N.C. 242, 277, 475 S.E.2d 202, 277 (1996). "[A] purported error, even one of constitutional magnitude, that is not raised and ruled upon in the trial court is waived and will not be considered on appeal." *State v. Anderson,* 355 N.C. 136, 142, 558 S.E.2d 87, 92 (2002). Further,

> [Rule 10(b)(1) ] requires a question to be presented first to the trial court by objection or motion. . . . This Court has held that it will not pass upon the constitutionality of a statute where the record does not reveal that the trial court was confronted with the issue and passed upon it.

N.C.R. App. P.10(b)(1); *In re Crawford*, 134 N.C. App. 137, 142, 517 S.E.2d 161, 164 (1999). Because Defendant failed to object at trial and the trial court had no opportunity to hear or rule on the issue, it cannot now be considered on appeal. Defendant's argument is overruled.

C.    Structural Error

Defendant next contends there was a *per se* or structural error. "Structural error is a rare form of constitutional error resulting from structural defects in the constitution of the trial mechanism which are so serious that a criminal trial cannot

- 8 -

reliably serve its function as a vehicle for determination of guilt or innocence." *State v. Garcia*, 358 N.C. 382, 409, 597 S.E.2d 724, 744 (2004) (citations omitted).

Since the United States Supreme Court first identified structural error in 1991,

> [they have] identified only six instances of structural error to date: (1) complete deprivation of right to counsel; (2) a biased trial judge; (3) the unlawful exclusion of grand jurors of the defendant's race; (4) the denial of the right to self-representation at trial; (5) denial of the right to a public trial; and, (6) constitutionally deficient jury instructions on reasonable doubt.

*State v. Blake*, 275 N.C. App. 699, 704, 853 S.E.2d 838, 842 (2020). The North Carolina Supreme Court "has recently declined to extend structural error analysis beyond the six cases enumerated by the United States Supreme Court." *Garcia,* 358 N.C. at 410, 597 S.E.2d at 745 (citation omitted).

The facts before us misalign with the six enumerated instances of structural error to date. This Court cannot conclude that mere technical issues rose to a level that Defendant's criminal trial could not have "serve[d] its function as a vehicle for determination of guilt or innocence." *State v. Seelig,* 226 N.C. App. 147, 159, 738 S.E.2d 427, 436 (2013) (cleaned up).

D.     Court's Authority Under Rule 2

Finally, Defendant contends this Court should exercise its authority under Rule 2 of the North Carolina Rules of Appellate Procedure to reach the merits of this

unpreserved issue. The exercise of Rule 2 is limited to "rare occasions." *State v. Hart,* 361 N.C. 309 316, 644 S.E.2d 201, 205 (2007) (citations omitted). This Court generally invokes Rule 2 in "circumstances in which substantial rights of an appellant are affected." *Id.* (citation omitted). Defendant has failed to demonstrate that his right to a fair trial free from error was adversely affected. In fact, he has failed to demonstrate that any error occurred. Further, the State and Defendant both treated the exhibit components as properly admitted evidence during witness questioning and Defendant raised no objections at trial. *U.S. v. Lopez*, 611 F.2d 44, 47 (4th Cir., 1979). Uncontestably admissible evidence, treated as admitted evidence by both parties and the court, though unnecessarily readmitted into evidence outside the presence of the jury, neither constitutes error nor scales the high bar for prejudicial error. Defendant was not deprived of his right to a fair trial.

## III. Conclusion

For the foregoing reasons, we conclude the trial court did not err in the admission of evidence, the trial court reliably served its function as a vehicle for determining guilt or innocence, and none of Defendant's substantial rights were affected. We hold Defendant received a fair trial free from error.

NO ERROR.

Chief Judge DILLON and Judge Tyson concur.