IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-982

Filed 1 October 2025

Johnston County, Nos. 18CR057622-500, 21CR000318-500

STATE OF NORTH CAROLINA

v.

KENNETH WAYNE LAMM, Defendant.

Appeal by Defendant from judgments entered 2–3 October 2025 by Judge
Thomas H. Lock in Johnston County Superior Court. Heard in the Court of Appeals
11 August 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Zachary K.*
> *Dunn, for the State.*
>
> *Attorney Drew Nelson for Defendant–Appellant.*

MURRY, Judge.

Kenneth W. Lamm (Defendant) appeals the trial court's decision to allow the
State to proceed under a felony-murder theory of first-degree murder at his trial. He
also appeals the trial court's treatment of the State's comments during jury selection,
opening statement, and closing argument. He argues that the trial court erred by
allowing collaterally estopped arguments, by permitting an alleged comment on
Defendant's refusal to testify, and by failing to declare a mistrial after the State's

closing argument. For the following reasons, this Court disagrees with Defendant and holds that the trial court did not err.

## I.   Background

Defendant's prosecution arises out of the disappearance and murder of Kathy Thomas (victim), who was last seen on 23 November 2018 and reported missing one week later. Investigators unsuccessfully tried to "ping" the victim's phone, suggesting it had been turned off or removed from cellular data. The victim's subpoenaed phone records revealed about 200 text messages between the victim and Defendant that began three days before her disappearance and ceased "four, five days later."

On 11 December 2018, police interviewed Defendant about the victim's disappearance. Defendant stated that he last saw her "around the 24th of November," after they had consensual sex at her home. He stated that the victim never entered his car and that he did not see her again after that point. That same day, police searched Defendant's car and noticed an "overwhelming" smell of bleach. They also searched Defendant's outdoor garbage bin, where they found bleach-stained clothes, bleach-soaked latex gloves, and a pair of boots. When they interviewed Defendant again the next day, he claimed that he and the victim had sex. He afterwards drove the victim to his girlfriend's house and stayed the night with her. He stated that he had not seen the victim since driving her back home the next day. Later that day, Defendant told his girlfriend that he "had to cover . . . up" the fact that the victim had

drowned at his girlfriend's house.

Shortly thereafter, police arrived at Defendant's girlfriend's house with cadaver dogs. Defendant waived his *Miranda* rights and gave police a third statement upon his immediate arrest, at which point he admitted to handcuffing the victim's hands behind her back while they had sex. Defendant also admitted to discovering the victim deceased in the bathtub, wrapping her body in a blanket, placing it in the back of his vehicle, and burying her in his girlfriend's backyard. He decided to bury the body there instead of calling the police because he knew "how it would look" given his status as a sex offender. He also admitted to scrubbing his car with bleach to remove any blood, disposing of the victim's cell phone by throwing it along the highway, and discarding the bloody bedding by tossing it in a dumpster. The police recorded all three of Defendant's police interviews and the State played them for the jury at trial.

On 13 December 2018, police discovered the victim's body partially decomposed and buried face-down in Defendant's girlfriend's backyard. The examiner found Defendant's DNA inside the victim's vagina. When police searched the victim's house the next day, they noticed a strong smell of bleach and found a blood-stained "cleaning tool." On 14 January 2019, a grand jury indicted Defendant for first-degree murder. On 15 March 2021, it then indicted Defendant for obtaining habitual felon status.

## A. First Trial

This matter came on for trial on 12 September 2022. At the close of the State's

evidence, Defendant moved to dismiss all charges. The trial court dismissed Defendant's first-degree rape and first-degree kidnapping charges, finding that the State had failed to offer sufficient evidence of each element of the charges. But the trial court denied the motion as to Defendant's first-degree murder charge and submitted it to the jury, which ultimately resulted in a hung jury. The trial court then declared a mistrial as to this latter charge.

## B. Second Trial

Defendant's first-degree murder charge came on for retrial on 11 September 2023. During pretrial proceedings, the State informed the trial court that it would proceed under two first-degree murder theories: (1) premeditation and deliberation, and (2) felony-murder with the underlying felonies of rape and kidnapping. The State explained its intention to introduce evidence regarding those charges at trial as "circumstantial evidence that the sexual encounter was not consensual" and thus resulted in the victim's death. Over Defendant's objection, the trial court ruled that the State could inform the jury of the rape and kidnapping during jury selection and opening statement.

The State informed and reiterated to the potential jurors during jury selection and substitutions that "the evidence w[ould] show . . . there was a violent sexual assault committed against" the victim during her murder. During opening statement, the State argued that Defendant had "violently raped, sexually assaulted, and murdered" the victim. The State noted that Defendant "[r]aped, murdered, [and]

buried her in his backyard" (again, over Defendant's objection). The State offered as evidence to show Defendant that committed the rape:

> (1) That Defendant and the victim had engaged in vaginal sex, (2) the age difference between the victim and Defendant, (3) the absence of any vaginal lubricant in the victim's vagina, (4) that blood was discovered on the "cleaning tool" found in the victim's home, (5) that there was evidence that bleach had been used at the victim's home and in Defendant's car, and (6) that Defendant had access to handcuffs and shackles.

(Brackets omitted.) Defendant did not testify or present evidence in his own defense.

At the charge conference, the trial court ruled against submitting to the jury the first-degree murder charge based on felony murder due to Defendant's prior acquittals of rape and kidnapping. During closing arguments, Defendant repeatedly objected to the State's mentions of his rape or sexual assault of the victim. The State played one of Defendant's interrogation videos for the jury and asked, "Was that a lie or did you just forget it?" The trial court sustained Defendant's objection to this comment and instructed the State not to address Defendant. Defendant contemporaneously moved for a mistrial on the grounds that this question was a "highly improper . . . attack on" his "right to remain silent," which the trial court denied.

On 2 October 2023, the jury convicted Defendant of second-degree murder. The next day, the jury convicted Defendant of obtaining habitual felon status. The trial court sentenced Defendant to life imprisonment without the possibility of parole. Defendant timely appealed.

## II.     Jurisdiction

This Court has jurisdiction over Defendant's appeal of a final judgment of the trial court under N.C.G.S. §§ 7A-27 and 15A-1444. *See* N.C.G.S. § 7A-27(b) (2023) (final judgment of a trial court); *id.* § 15A-1444(a) (pled not guilty but found guilty).

## III.     Analysis

On appeal, Defendant argues that the trial court prejudicially erred (1) by allowing the State to argue that he kidnapped and raped the victim at trial; and (2) by denying his motion for a mistrial after the State's closing argument.[1] In the alternative, Defendant argues that this Court should vacate his convictions because these cumulative errors deprived him "of his due[-]process right to a trial free of prejudicial error." For the reasons below, this Court disagrees with Defendant and holds that the trial court did not err at any point in the proceedings.

### A. State Commentary

First, Defendant argues that the trial court prejudicially erred by overruling his objection to the State's remarks during jury selection, opening arguments, and closing arguments. He claims that the doctrine of double-jeopardy collateral estoppel

---

[1]  Defendant also argues the trial court erred by allowing the State to proceed under a felony-murder theory at trial. Despite his failure to "set forth any . . . citation to authority to support this contention," *State v. Evans*, 251 N.C. App. 610, 625 (2017) (citing N.C. R. App. P. 28(a)), Defendant believes that "North Carolina law prohibit[s] the [S]tate from advancing" an argument for felony murder. But the trial court dismissed Defendant's felony-murder charge and submitted the first-degree murder charge *only* on the theory of premeditation and deliberation. The jury did not consider, much less convict, Defendant under the felony-murder rule.

barred the State from arguing that he "raped, kidnapped, and sexually assaulted" the

victim. More specifically, Defendant asserts that the trial court erred (1) during jury

selection by overruling his objection to the State's comment that "the evidence will

show in this case there was a violent sexual assault," (2) during opening statements

by overruling his objection to the State's comment that Defendant "violently raped,

sexually assaulted [the victim,] and murdered her," and (3) during closing arguments

by overruling his objection to the State's remark that Defendant "raped or sexually

assaulted" the victim.[2] After reviewing these disparate arguments solely for an abuse

of discretion, this Court disagrees and holds that collateral estoppel does not bar any

of the State's comments. *See State v. Lee*, 335 N.C. 244, 268 (1994) (reviewing jury

selection); *State v. Paige*, 316 N.C. 630, 648 (1986) (reviewing opening statements);

*State v. Braxton*, 352 N.C. 158, 202 (2000) (reviewing closing arguments).

### 1. *Double-Jeopardy Collateral Estoppel*

As a threshold matter, Defendant's argument misinterprets the doctrine of

collateral estoppel in the double-jeopardy context. Whether collateral estoppel bars an

issue is a "[q]uestion[ ] of law . . . reviewed *de novo*." *Bluebird Corp. v. Aubin*, 188 N.C.

App. 671, 678 (2008). Under a *de novo* review, this Court "considers the matter anew and

---

[2] Defendant purportedly objects to the State's "improper allegations" for the first time on appeal. These errors could have been reviewed for plain error; however, Defendant does not assert plain error in his brief and waives appellate review as a result. *See* N.C. R. App. P. 10(a)(1).

freely substitutes its own judgment for that of the trial court." *In re K.S.*, 380 N.C. 60, 64 (2022).

### a. Generally

The Double Jeopardy Clause forbids the prosecution of any person more than once for "the same offen[s]e." U.S. Const. Amend. V; *see Benton v. Maryland*, 395 U.S. 784, 794 (1969) (articulating constitutional right). A defendant is protected from double jeopardy only if the original jeopardy is terminated by a specific event—*e.g.*, his acquittal. *Richardson v. United States*, 468 U.S. 317, 325 (1984). An acquittal includes "any ruling that the [State's] proof is insufficient to establish criminal liability for an offense." *Evans v. Michigan*, 568 U.S. 313, 318 (2013). But a hung-jury mistrial does not "terminate[ ] original jeopardy," *State v. Courtney*, 259 N.C. App. 635, 643 (2018) (quoting *Richardson*, 468 U.S. at 326), in which case the defendant may be retried for the same offense, *see State v. Simpson*, 303 N.C. 439, 447 (1981). *See generally* N.C.G.S. § 15A-1063(2) (2023) (authorizing mistrial absent "reasonable probability of the jury's agreement upon a verdict").

In this context, collateral estoppel is a part of the constitutional and statutory guarantee against double jeopardy. *See Ashe v. Swenson*, 397 U.S. 436, 443–44 (1970); N.C.G.S. § 15A-954(a)(7) (codifying common-law principle of collateral estoppel to criminal cases). As an issue-specific doctrine, collateral estoppel applies "only if a jury could not rationally" base its verdict in a second trial "on an[y] *issue* other than" adjudicated in the first trial. *State v. Edwards*, 310 N.C. 142, 145 (1984). This

"demanding" test for collateral estoppel, *Currier v. Virginia*, 585 U.S. 493, 499 (2018), mandates dismissal of a criminal charge where "an issue of fact or law essential to a successful prosecution" was *necessarily* determined by a previous acquittal, *State v. Spargo*, 187 N.C. App. 115, 119–20 (2007). But the mere "possibility" of a "necessar[y] determin[ation]" at a prior trial "does not prevent [its] re-examination" per se. *Edwards*, 310 N.C. at 145 (quotation omitted). Rather, an initial acquittal collaterally estops the State from a subsequent prosecution only if a jury would be "irrational . . . in the first trial to acquit without finding in the defendant's favor on a fact essential to a conviction in the second." *Currier*, 585 U.S. at 500 (quotation omitted); *see, e.g.*, *State v. Alston*, 323 N.C. 614, 616–17 (1988) (no collateral estoppel where the defendant's prior acquittal of firearm possession at 3:30 a.m. did not necessarily determine whether he had firearm at 12:00 a.m. for armed robbery in second trial).

### b. *Another Purpose*

Collateral estoppel does not apply where the "same evidence could . . . be introduced at the second trial for an entirely different purpose than . . . [in] the earlier trial." *Edwards,* 310 N.C. at 146 (quotation omitted). One purpose includes evidence "pertaining to the chain of events explaining the context, motive[,] and set-up of the crime . . . if necessary to complete the story of the crime for the jury." *State v. Agee*, 326 N.C. 542, 548 (1990); *see State v. Jenerette*, 281 N.C. 81, 89 (1972) (evidence admissible to establish "chain of circumstances"). Defendant concedes the evidentiary chain of circumstances surrounding the first-degree murder but asserts that it

collaterally estops the State's arguments based thereon. In doing so, Defendant contradicts both common sense and established precedent.

In *Edwards*, a jury acquitted the defendant of a larceny charge and hung on a charge of breaking and entering with the *intent* to commit larceny (B&E). *Edwards*, 310 N.C. at 144. The State subsequently re-prosecuted the defendant for B&E and ultimately secured a conviction materially based on "evidence . . . concerning his alleged participation in the larceny of the [original] jewelry store." *Id.* Our Supreme Court considered whether the first larceny acquittal collaterally estopped the State from relitigating the hung B&E charge in a subsequent trial using facts found amidst the first trial. *Id.* at 145. The *Edwards* Court held that the State could do so, reasoning that the first adjudication would collaterally estop the second only if "th[at] second jury f[ou]nd against [him] on an *issue*" "absolutely necessary" to his original larceny acquittal. *Id.* Similarly, Defendant's rape and kidnapping acquittals do not collaterally estop the State from introducing or arguing the truth of evidence tending to show that he committed a certain crime in service of his ultimate murder of the victim. Thus, this Court holds that the trial court did not err by overruling Defendant's objections.

### 2. *Abuse of Discretion*

Because collateral estoppel did not bar the State's arguments, the trial court had discretion to allow them. A trial court abuses its discretion only by ruling in a manner "manifestly unsupported by reason." *Patton v. Vogel*, 267 N.C. App. 254

(2019). We do not disturb "the trial court's discretion unless the impropriety of the argument made is extreme and clearly calculated to prejudice the jury in its deliberations." *Smith v. Hamrick*, 159 N.C. App. 696, 698–99 (quotation omitted). We collectively address Defendant's assignments of erroneous jury selection, opening statements, and closing arguments to avoid unnecessary repetition. In all three cases, Defendant must show prejudice to merit our reversal or vacation on appeal. *See Lee*, 335 N.C. at 266 (jury selection); *Paige*, 316 N.C. at 648 (opening statements); *Braxton*, 352 N.C. at 201–02 (closing arguments).

Generally, an attorney may "argue any position or conclusion with respect to a matter in issue" "on the basis of his analysis of the evidence." N.C.G.S. § 15A-1230(a) For jury trials in particular, "the whole case as well as the law of fact may be argued." *Id.* § 7A-97. The State has "wide latitude in the scope" of its arguments. *State v. Walls*, 342 N.C. 1, 48 (1995) (quotation omitted). It may argue "all the facts in evidence as well as any reasonable inferences that may be drawn from those facts," *State v. Riley*, 137 N.C. App. 403, 413 (2000), so long as it does so in a manner that accords "with the record" and avoids "the fields of conjecture or personal opinion," *State v. Syriani*, 333 N.C. 350 (1993).

We cannot create a new rule limiting the reasonable inferences a party may argue from admitted evidence because the State may assert *all* reasonable inferences from admissible evidence. Whether permitted by collateral estoppel or by Defendant's own concession, the State's evidence shows the admissibility of Defendant's prior-

acquitted crime. As a result, the State may argue all inferences reasonably drawn from that evidence. Because the jury could reasonably infer that Defendant sexually assaulted the victim around the time of her murder, the State properly argued that Defendant sexually assaulted her. In fact, Defendant admits this evidence was "necessary to complete the story of the crime for the jury" because it

> speaks to a sexual relationship between [Defendant] and [Victim] (the fact that they engaged in vaginal sex and the availability of handcuffs and shackles), concerns the [S]tate's murder allegation (the blood discovered on the "cleaning tool," the use of bleach, and the availability of handcuffs and shackles), or [is] largely irrelevant (the age difference and the absence of vaginal lubricant). This evidence, therefore, was admissible in [Defendant's] second trial.

(Quotation omitted.) Defendant's argument collapses under its own weight. Here, the trial court did not abuse its discretion by overruling Defendant's objection to the State's "allegations." Thus, this Court holds no error.

## B. Failure to Declare a Mistrial

Second, Defendant argues that the trial court erred "by failing to declare a mistrial after the [S]tate's improper closing argument" when it played one of Defendant's interrogation videos for the jury and asked, "Was that a lie or did you just forget it?"[3] He asserts that the State's comment "violat[ed] . . . [his] constitutional right not to testify against himself." Defendant's timely objection to the closing

---

[3] Defendant attempts to make additional arguments unpreserved in the record, which we do not address. His brief challenges three portions of the State's closing arguments. But Defendant's motion for a mistrial included only one. Because Defendant did not include the other two arguments in support of his motion and failed to receive a ruling on them, he waived appellate review on those grounds. *See* N.C. R. App. P. 10(a)(1).

argument subjects the trial court's subsequent denial to an abuse-of-discretion standard. *See State v. King*, 343 N.C. 29, 45 (1996). For the following reasons, this Court disagrees with Defendant and holds that the trial court did not abuse its discretion when it did not declare a mistrial.

A criminal defendant has the constitutional right to refuse to testify at trial. U.S. Const. amend. V, cl. 3; N.C. Const. art. I, § 23, cl. 4; *accord* N.C.G.S. § 8-54 ("[No] person . . . charged with the commission of a criminal offense" may be "compel[ed] to answer any question tending to criminate himself."). Prosecutorial commentary on a defendant's refusal to so testify is the sort of mistrial-worthy impropriety that "result[s] in substantial and irreparable prejudice to the defendant's case." *id.* § 15A-1061; *see State v. Baymon*, 336 N.C. 748, 758 (1994) (granting new trial after State impliedly accused defendant of "hiding behind his right not to take the stand").

But we also afford a trial court "great deference since [it] is in a far better position than an appellate court to determine whether the degree of influence on the jury was irreparable." *State v. Hurst*, 360 N.C. 181, 188 (2006) (quotation omitted). A mistrial is a "drastic remedy[ ] warranted only for such serious improprieties as would make it impossible to attain a fair and impartial verdict." *State v. Stocks*, 318 N.C. 437, 441 (1987). Although the State may comment "on a defendant's failure to produce witnesses or exculpatory evidence," *State v. Reid*, 334 N.C. 551, 555 (1993), it runs afoul of constitutional protections "if the jury would naturally and necessarily understand the statement to be a comment on [his] failure . . . to testify." *State v.*

*Mitchell*, 353 N.C. 309, 326 (2001). We assess challenged remarks "in the overall context in which they were made and in view of the overall factual circumstances to which they stand." *State v. Penland*, 343 N.C. 634, 662 (1996).

We do not view the State's closing argument as improper commentary on Defendant's constitutionally protected right not to testify. Here, the State's comment merely highlighted Defendant's prior inconsistent statements and subsequent failure to produce exculpatory evidence regarding the discrepancies between his various statements to police. The State's commentary here "does not allege or even address" Defendant's refusal to testify. *State v. Paker*, 185 N.C. App. 437, 445 (2007). Nor does it make "an extended reference to defendant's exercise of his right not to testify." *State v. Gregory*, 348 N.C. 203, 211 (1988); *see State v. Miller*, 357 N.C. 583, 588 (2003) (holding that State's comment of "still waiting for defendant to deny" the allegations was not improper). The trial court thoughtfully and deliberately exercised its discretion by finding that this comment did not "irreparably and substantially" prejudice Defendant's case. Thus, this Court holds that the trial court did not abuse its discretion by declining to declare a mistrial.

### C. Cumulative Error

Finally, Defendant claims that these purported errors cumulatively violated his right to a fair trial. We disagree. "Cumulative error leads to reversal when taken as a whole [the errors] deprived the defendant of his due process right to a fair trial free from prejudicial error." *State v. Wilkerson*, 363 N.C. 382, 426 (2009) (quotation

omitted). A finding of cumulative error requires "*multiple* significant errors" at trial for us to "conclude that a defendant has met the high bar of demonstrating that he has been wholly deprived . . . of his due process right to a fair trial free from prejudicial error." *State v. Gillard*, 386 N.C. 797, 852 (2024) (citation modified). Here, the trial court did not err in any respect. Thus, this Court necessarily holds that the trial court did not cumulatively err.

## IV.    Conclusion

For the reasons discussed above, this Court holds that the trial court did not err (1) by allowing the State to argue that Defendant kidnapped and raped the victim during its jury selection, opening statement, and closing argument; and (2) by denying Defendant's motion for a mistrial after the State's closing argument. As a result, neither did the trial court cumulatively err in any respect.

NO ERROR.

Judges ZACHARY and HAMPSON concur.